**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

BRUCE D. BARON, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

v.

CANOPY GROWTH CORPORATION,
DAVID KLEIN, and JUDY HONG,

        Defendants.

Case No.: 1:25-cv-01877-AMD-LKE

Hon. Ann M. Donnelly

**MOHAMMAD TAYARAN'S MEMORANDUM IN OPPOSITION**
**TO COMPETING MOTIONS FOR LEAD PLAINTIFF AND LEAD COUNSEL**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................. 1

II.     ARGUMENT .................................................................................................................... 2

        A.      The PSLRA Process............................................................................................. 2

        B.      SOJ Company, LLC Is a Shell Day-Trading Entity that Profited from the Alleged
                Fraud. .................................................................................................................. 3

        C.      Movants Adam Palas and Carlos Luis Acero Herrero Incurred Most of Their Losses
                from Option Trading. ........................................................................................... 9

        D.      Mohammad Tayaran Should Be Appointed Lead Plaintiff. .................................. 10

III.    CONCLUSION................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,*
  258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................... 11

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................................... 4, 5

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir.2006)................................................................................................ 6

*In re Boeing Co. Aircraft Sec. Litig.*,
  No. 19 CV 2394, 2019 U.S. Dist. LEXIS 198259 (N.D. Ill. Nov. 15, 2019) ........................... 8

*Chahal v. Credit Suisse Grp. AG,*
  Nos. 18-CV-2268 *et al*., 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)......... 1, 10

*In re Comverse Tech., Inc. Sec. Litig.,*
  No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028 (E.D.N.Y. Mar. 2, 2007)......................... 3, 10

*Cook v. Allergan PLC*,
  Nos. 18 Civ. 12089 (CM); 18 Civ. 12219 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y.
  Mar. 21, 2019)................................................................................................................ 10

*Desilvio v. Lion Biotechs., Inc.*,
  No. 17-cv-02086-SI, 2017 U.S. Dist. LEXIS 222274 (N.D. Cal. July 7, 2017)...................... 8

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
  No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020)............. 9

*In re Enzymotec Ltd. Sec. Litig.*,
  No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015)........................................ 6

*Faris v. Longtop Fin. Techs. Ltd.,*
  No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec.
  L. Rep. (CCH) P96,562 (S.D.N.Y. Oct. 4, 2011) .................................................................. 11

*Galmi v. Teva Pharms. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)................................................................................ 4, 5

*Gross v. AT&T Inc.*,
  No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 128615 (S.D.N.Y. July 31, 2019) .............. 5

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
  338 F.R.D. 205 (S.D.N.Y. 2021) ........................................................................................ 5

1

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
616 F. Supp. 2d 461 (S.D.N.Y. 2009) ....................................................................... 3

*Karp v. Diebold Nixdorf, Inc.*,
Nos. 19 Civ. 6180(LAP), et. al., 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019) ... 7

*In re Netflix, Inc., Sec. Litig.*,
Nos. 12-0225 SC, et. a., 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 27, 2012) ................. 7

*Perez v. Hexo Corp.*,
Nos. 19 Civ. 10965 (NRB), et. al., 2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020) ........................................................................................... 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................. 7

*Rodriguez v. DraftKings Inc.*,
No. 21 CIV. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ............ 6

*Shaffer v. Horizon Pharma PLC*,
No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016) ................ 5

*Stoopler v. Direxion Shares ETF Tr.*,
Nos. 09 CIV. 8011 RJH, et. al., 2010 U.S. Dist. LEXIS 82296 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) .................................................................................. 4

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) .......................................................................... 4

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
No. 20-cv-0966-AJB-DEB, 2021 U.S. Dist. LEXIS 27438 (S.D. Cal. Feb. 12, 2021) ............ 8

**Statutes**

15 U.S.C. §78u-4 ................................................................................................... 1, 2, 3

## I.      INTRODUCTION

This securities fraud class action is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires courts at the outset to appoint a "lead plaintiff" and "lead counsel" to oversee and conduct the litigation. 15 U.S.C. §78u-4(a)(3). The role of "lead plaintiff" is important insofar as the individuals appointed are trusted with overseeing their lawyers and serving in a fiduciary capacity to act in the best interests of their fellow class members. To aid courts in their decision, the PSLRA provides a straightforward process for assessing the competing applicants. It gives preference to the movant with the "largest financial interest" in the action and otherwise satisfies the typicality and adequacy requirements of Rule 23. This preference or presumption can only be rebutted by actual "proof" that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In this District, Courts routinely consider a movant's claimed loss as most determinative. *Chahal v. Credit Suisse Grp. AG,* Nos. 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018). Mohammad Tayaran is the presumptive lead plaintiff as he has the largest financial interest of any movant who *also* satisfies the Rule 23 requirements**.** Mr. Tayaran suffered a loss of nearly $100,000 from trading in Canopy Growth stock during the Class Period and, consequently, easily meets the typicality and adequacy requirements of Rule 23.

Two movants claim larger losses than Mr. Tayaran. However, these movants are ineligible to serve as the lead plaintiff. First, SOJ Company, LLC is an atypical day-trading entity that fails to establish its adequacy to serve as the lead plaintiff, let alone do so free from unique defenses. In fact, when closely reviewed, SOJ Company, LLC's *200 pages* of trading records actually shows that the entity profited from the alleged fraud with a gain of just over $10,000. Messrs. Adam Palas

and Carlos Luis Acero Herrero likewise warrant careful scrutiny. The majority of their trading losses stem from option transactions and not common stock, thereby rendering them atypical from the class at large.

Appointing SOJ Company, LLC or Messrs. Palas and Herrero as the lead plaintiff in this case would place the class at risk and subject it to unnecessary danger. This argument is not speculation but instead based on transaction histories submitted under certification with the opening motion papers. Accordingly, the Court should reject their respective motions and grant Mr. Tayaran's motion in its entirety.

## II.    ARGUMENT

### A.    The PSLRA Process.

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23. 15 U.S.C. §78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc). Congress created the lead plaintiff presumption because it believed that the movant with the largest loss would be most incentivized to actively prosecute the securities class action and monitor counsel:

> Further, the provisions created a "rebuttable presumption" that the most "adequate plaintiff" is, inter alia, the person or group of persons that "has the largest financial interest in the relief sought by the class." "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor

2

– would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC,* 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

### B. SOJ Company, LLC Is a Shell Day-Trading Entity that Profited from the Alleged Fraud.

Congress enacted the PSLRA with the intent of having true shareholders with an interest in the outcome of the litigation serve as the lead plaintiff. This goal is accomplished by requiring courts to give a preference (*i.e.*, a presumption) to shareholders with the largest financial interest in the litigation when appointing the lead plaintiff. *See*, *e.g.*, *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028, at *16 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"). SOJ Company, LLC fails in this regard because it in fact has a trading gain from its class period transactions and, in any event, failed to make the necessary showing of its adequacy to serve as the lead plaintiff.[1]

---

[1] Exhibit A to the Supplemental Declaration of Adam M. Apton filed herewith contains a spreadsheet calculating SOJ Company, LLC's trading gain. The highlighted transactions identify transactions that resulted in either no recoverable loss or a trading gain.

3

With nearly ***200 pages*** of trades appended to its certification, SOJ Company, LLC is clearly an investment vehicle used for day-trading. *See* Dkt. No. 15-2. Indeed, the entity entered and exited positions within hours (if not minutes) repeatedly throughout the class period. *See id*. This conduct is typical of day traders, which Defendants will argue precludes application of the presumption of reliance. For this reason, courts have avoided appointing day traders as lead plaintiffs. *See Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff."); *Stoopler v. Direxion Shares ETF Tr.*, Nos. 09 CIV. 8011 RJH, et. al., 2010 U.S. Dist. LEXIS 82296, at *12 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) (day traders potentially subject to unique defenses); *see also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 622 n.16 (S.D.N.Y. 2015) (noting that a movant's status as an in-and-out trader, a specific type of day trader, "would render it an inappropriate lead plaintiff under the third prong of the PSLRA's evaluation of a potential lead plaintiff: that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.").

SOJ Company, LLC's irregular trading makes its suitability as a class representative ripe for attack by Defendants. Specifically, Defendants will argue that its trading rebuts the presumption of reliance provided by the Supreme Court in *Basic, Inc. v. Levinson* and therefore that its claims are not typical of those of the class. *See Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). The *Basic* court created a presumption of reliance premised on the "fraud-on-the-market" theory. It held that, "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Id*. at 247. However, "[a]ny showing that severs the link

4

between the alleged misrepresentation and … [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance." *Id*. at 248 (emphasis added). The presumption of reliance is critical to class certification and any proposed class representative must have relied on the market's integrity in the same manner as other class members. *See, e.g., Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 215-16 (S.D.N.Y. 2021) (noting that securities plaintiffs must "prove reliance on a class-wide basis through common, circumstantial evidence ... for the purposes of class certification.") (citation omitted). Here, even if SOJ Company, LLC's trading does not conclusively demonstrate that it did not rely on the integrity of the market (and on its face, it does just that), at a minimum, it shows that it employed an individualized and unusual trading strategy, which Defendants will seize upon to argue that it is not entitled the presumption of reliance rendering it atypical and inadequate to represent the class.

Defendants will most certainly succeed in rebutting the *Basic* presumption given the transaction history at hand. SOJ Company, LLC will have to expend significant resources attempting to avoid that result, which in and of itself is enough to disqualify it from serving as Lead Plaintiff. *See Galmi*, 302 F. Supp. 3d at 504 n.10 (finding that, at the lead plaintiff stage, "[t]he merits of whether the day trading defense is actually the prevailing law within the Circuit, however, is not necessarily relevant."); *see also Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 128615, at *6 (S.D.N.Y. July 31, 2019) ("Before disqualifying a potential lead plaintiff [as subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed. Rather, 'many courts have rejected appointments of lead plaintiffs based on potential risks.'") (quoting *Shaffer v. Horizon Pharma PLC*, No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. June 27, 2016) (emphasis in original)).

5

Courts in the Second Circuit have specifically held that idiosyncratic traders, such as day-traders, would unnecessarily expose the class to unique defenses and thus cannot serve as a lead plaintiff. For example, in *Rodriguez v. DraftKings Inc.*, the court refused to appoint a day-trader as lead plaintiff, reasoning that a day-trader would be vulnerable to attacks by defendants and that "the specter of such attacks on [the movant] would loom large were he to be a proxy for the class." 2021 U.S. Dist. LEXIS 219489, at *27 (S.D.N.Y. Nov. 12, 2021). The Court went on to state that: "while [the movant] might ultimately succeed in persuading the Court that his idiosyncrasies ought not defeat class certification or harm his claims' prospects on the merits, the interests of the class disfavor exposing it to the risk that his history will dog him. The question whether [the movant's] trading practice compromise his claims and his adequacy as a class representative is sure to arise in the litigation. That potential to distract militates against his appointment." *Id*. Here, SOJ Company, LLC's erratic trading will distract from the litigation and create risk to class certification. It will have to spend time and class resources addressing the 200 pages of transactions that it submitted, explaining the strategy and process driving these trades. This will be needlessly tedious, expensive, and time-consuming, all to the detriment of the class. Litigating unique defenses inflates the costs and time associated with prosecuting the claims at the heart of the case, and can create a sideshow which taxes both the litigants and the Court. These very factors drive the PSLRA's express concern with unique defenses. *See In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *6 (D.N.J. Mar. 3, 2015) ("The existence of a defense unique to the presumptively most adequate lead plaintiff rebuts the presumption because a unique defense … raises the danger that … 'the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class.'") (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir.2006)); *In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC, et. a., 2012

6

U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 27, 2012) (the requirement that a movant lacks unique defenses serves to "protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.").

Second to SOJ Company, LLC's atypical trades, it is unclear who even is or are the beneficial owners of the Canopy Growth securities traded by SOJ Company, LLC during the Class Period. The certification submitted with its opening motion papers "Marcelo Najnudel, Manager." Dkt. No. 15-2. No other background information is provided about Mr. Najnudel or the other members of SOJ Company, LLC, let alone what it does, how it operates, or why it traded so heavily in Canopy Growth securities. The certification or the accompanying motion papers fail to inform the Court of Mr. Najnudel's educational background, familiarity with this kind of litigation, or the full details regarding the ownership and leadership of the entity he apparently manages.

A recent trend in caselaw throughout the country has begun to interpret the PSLRA to mean that a *prima facie* showing of adequacy requires movants to include information necessary to determine if the movant has any conflicts with other class members, and if the movant will be able to effectively oversee counsel. *See Perez v. Hexo Corp.,* Nos. 19 Civ. 10965 (NRB), et. al., 2020 U.S. Dist. LEXIS 32381, at *6 (S.D.N.Y. Feb. 25, 2020) (denied appointing movant with largest loss for providing no information about themselves in opening motion, despite filing a supplemental declaration including additional information); *Karp v. Diebold Nixdorf, Inc.*, Nos. 19 Civ. 6180(LAP), et. al., 2019 U.S. Dist. LEXIS 188670, at *16 (S.D.N.Y. Oct. 30, 2019) (denying lead plaintiff motion of individual investors who "have provided the Court with little to go on with respect to their alleged capacity to manage this litigation."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.,* 229 F.R.D. 395, 417 (S.D.N.Y. 2004) ("While the size, available resources or even experience of a candidate are not dispositive factors

7

in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class."); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 U.S. Dist. LEXIS 198259, at *23-24 & n.10 (N.D. Ill. Nov. 15, 2019) (The failure to include any details in an individual investor's motion is a "red flag[]" because "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process."); *Desilvio v. Lion Biotechs., Inc.*, No. 17-cv-02086-SI, 2017 U.S. Dist. LEXIS 222274, at *2-3 (N.D. Cal. July 7, 2017) (requiring individual movants to submit responses to questionnaire stating "(i) each individual's city and state of residence; (ii) each individual's occupation; (iii) whether and to what extent the moving individuals are familiar with one another; and (iv) how each individual came to retain his/her respective lawyer(s)"); *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, No. 20-cv-0966-AJB-DEB, 2021 U.S. Dist. LEXIS 27438, at *12 (S.D. Cal. Feb. 12, 2021) (rejecting movant where there was a "dearth of information upon which the Court can determine" adequacy).

Due to the lack of information provided by SOJ Company, LLC, counsel was unable to determine whether movant has any conflicts with other class members, whether it can effectively monitor class counsel, the purpose of the limited liability company, and if Mr. Najnudel is truly its beneficial owner and authorized to act on behalf of movant. If Courts expect movants to provide more information about themselves to make a *prima facie* showing of adequacy, it is clear that SOJ Company, LLC has failed to meet this threshold.

**C.      Movants Adam Palas and Carlos Luis Acero Herrero Incurred Most of Their Losses from Option Trading.**

Messrs. Palas and Herrero fail to satisfy the typicality prong of Rule 23 because the majority of their losses stem from option transactions, and not common stock. Indeed, based on their loss calculation charts submitted with the opening motion papers, approximately 65% of their losses are attributable to option transactions. *See* Dkt. No. 16-4 ($245,217 option losses vs. $144,124 stock losses). Case law holds that a movant is atypical if he/she purchases a significant amount of securities other than common stock. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969, at *10 (S.D.N.Y. Dec. 28, 2020) (declining to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy"). The *Di Scala* case is informative. In that case, competing movants (Honggui Qu and Pinchas Dan Danino) challenged the typicality and adequacy of the movant with the alleged largest financial loss (Edmund Jin). Qu and Danino argued that Jin was atypical because 82% of his losses came from options-related transactions. Several questions were raised, including 1) whether losses arising from Jin's sale of put options would qualify him as member of a class of investors who purchased or otherwise acquired UCO securities from March 6, 2020 and April 27, 2020, inclusive, and 2) whether Jin was motivated by the same market incentives as class members who traded shares on the open market. The Court held that, "[u]ndoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification. Accordingly, because factual issues unique to Jin 'would likely threaten to become the focus of the litigation,' the Court declines to appoint Jin lead plaintiff." *Di Scala*, 2020 U.S. Dist. LEXIS 242969, at *10-11 (internal citations omitted).

The court in *Cook* came to a similar conclusion when it refused to appoint a movant (Ge Zhou) with over 60% of claimed losses as a result of options trading. The *Cook* court held that Zhou's claims were atypical of the average stock holder's claim under Rule 23. Citing *Andrada,* the court stated that appointing Zhou lead plaintiff "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019) (internal quotation and citation omitted). Each of the aforementioned factors raises issues specific to Messrs. Palas and Herrero, making them atypical.

### D.    Mohammad Tayaran Should Be Appointed Lead Plaintiff.

Once SOJ Company, LLC and Messrs. Palas and Herrero are disqualified, Mr. Tayaran becomes the presumptive lead plaintiff. While the PSLRA does not define "financial interest," Courts in the second Circuit and this District, typically find that the amount of financial loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See, e.g., In re Comverse Tech.,* 2007 U.S. Dist. LEXIS 3028, at *16 (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Chahal,* 2018 U.S. Dist. LEXIS 104185, at *12) (equating financial interest with economic loss). Courts will also consider other factors when determining a movant's financial interest, if necessary, such as retained shares, and funds expended.

| Movant | Gross Shares Purchased | Net Shares Retained | Funds Expended | Claimed Loss |
|---|---|---|---|---|
| Mohammad Tayaran | 42,747 | 42,747 | $150,022 | $95,669 |

10

| Allen Dennis | 47,150 | 13,650 | $78,936 | $40,858 |
|---|---|---|---|---|

As demonstrated above, Mr. Tayaran possesses the largest financial interest before the Court, as he suffered the largest loss, purchased the most shares, retained the most shares, and expended the most funds out of the remaining movants.

In addition to possessing the greatest financial interest, Mr. Tayaran satisfies the adequacy and typicality requirements of Rule 23. "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.''" *Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec. L. Rep. (CCH) P96,562, at *12 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)). "Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. "The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that [he] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class." *Id*. (ellipsis omitted).

As Mr. Tayaran has the largest financial interest in the litigation and satisfies the adequacy and typicality requirements of Rule 23, he is entitled to the presumption of being the "most adequate plaintiff" to represent the Class.

## III.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant his Motion

and enter an Order: (1) appointing Mr. Tayaran as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: June 17, 2025                                          Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Mohammad Tayaran and*
*[Proposed] Lead Counsel for the Class*

12