UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE D. BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No.  1:25-cv-01877-AMD-LKE |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ADAM PALAS AND CARLOS LUIS ACERO HERRERO FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 8

    I.    THE COURT SHOULD APPOINT PALAS AND HERRERO AS
        CO-LEAD PLAINTIFFS ........................................................................................ 8

        A.    Palas and Herrero Have the Largest Financial Interest of Any
               Eligible Movant ........................................................................................ 8

        B.    Palas and Herrero Satisfy the Applicable Requirements of Rule 23 .......... 9

    II.    THE COURT SHOULD DENY THE COMPETING MOTIONS ....................... 14

        A.    No Eligible Competing Movant Claims a Larger Financial Interest
               than Palas and Herrero ............................................................................ 14

        B.    SOJ Is Inadequate, Atypical, and Subject to Disqualifying Unique
               Defenses ................................................................................................. 15

            1.    SOJ's Opacity Makes It Inadequate Under Rule 23 ..................... 15

            2.    SOJ's Unorthodox, High-Frequency Trading Pattern Renders
                 It Atypical of the Class It Seeks to Represent .............................. 19

            3.    SOJ Is Subject to Disqualifying Unique Defenses Based on
                 Its Unorthodox, High-Frequency Trading Pattern ....................... 22

            4.    Discovery into SOJ Is Warranted ............................................... 25

CONCLUSION ................................................................................................................... 26

CERTIFICATE OF WORD COUNT .................................................................................. 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
  C10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)................................6, 19, 22

*Aude v. Kobe Steel, Ltd.*,
  17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ..................................................8, 9

*Barnet v. Elan Corp., PLC*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ................................................................................3, 11, 12

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................................. *passim*

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) .............................................................................20, 22, 24

*Broadfoot v. Barrick Gold Corp.*,
  No. 17-cv-3507, 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017)...........................................7, 25

*China Agritech, Inc. v. Resh*,
  584 U.S. 732 (2018)..............................................................................................................3, 11

*Comeau v. VinFast Auto Ltd.*,
  No. 24 CV 2750 (NGG)(RML), 2024 WL 4654216 (E.D.N.Y. Nov. 1, 2024)....................1, 8

*Dookeran v. Xunlei Ltd.*,
  Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018).......................3, 10

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ..................................19

*Farhar v. Ontrak, Inc.*,
  No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589 (C.D. Cal. July 13, 2021) ........................22

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................2, 3, 9, 10

*Galmi v. Teva Pharms. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)........................................................................19, 23, 24

*Gross v. AT&T Inc.*,
  No. 19-CV-2892 (VEC), 2019 WL 7759222 (S.D.N.Y. June 24, 2019)......................... *passim*

*Haideri v. Jumei Int'l Holding Ltd.*,
    No. 20-CV-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ..................................15

*Hodges v. Akeena Solar, Inc.*,
    263 F.R.D. 528 (N.D. Cal. 2009) ...........................................................................................13

*Howard v. Liquidity Servs.*,
    322 F.R.D. 103 (D.D.C. 2017) ................................................................................................23

*Hurst v. Enphase Energy*,
    No. 20-cv-04036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ...........................20, 24

*In re Bally Total Fitness Sec. Litig.*,
    Nos. 04 C 3530 *et al.*, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) .......................................22

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)...................4, 11

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019)...............................................15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)....................................................................................................11

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 NGG RER, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...........................1, 8

*In re HEXO Corp. Sec. Litig.*,
    No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ...................4, 15, 19

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) .....................................................................................................11

*In re Netflix, Inc., Sec. Litig.*,
    Nos. 12-0225 SC *et al.*, 2012 WL 1496171 (N.D. Cal. Apr. 26, 2012) ..................................23

*In re Orion Sec. Litig.*,
    No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...............................2, 10

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 112 (S.D.N.Y. 2010) .........................................................................................2, 10

*Juliar v. Sunopta Inc.*,
    No. 08 CIV. 1070 (PAC), 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ................................11

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................8, 10

iii

*Lewitter v. Terran Orbital Corporation et al.*,
No. 9:24-cv-81191 (S.D. Fla. Jan. 2, 2025) ..........................................................................4, 13

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ..............................................12

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
17-CV-06130 (LTS)(SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ................................8

*Peters v. Jinkosolar Holding Co.*,
No. 11 CIV. 7133 JPO, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012)................................4, 12

*Piven v. Sykes Enterprises, Inc.*,
137 F. Supp. 2d 1295 (M.D. Fla. 2000) ..................................................................................15

*Rao v. Quorum Health Corp.*,
221 F. Supp. 3d 987 (M.D. Tenn. 2016) ..................................................................................25

*Reimer v. Ambac Fin. Grp., Inc.*,
No. 08 CIV. 1273(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008).................................11

*Rodriguez v. DraftKings Inc.*,
No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)....................... *passim*

*Sabbagh v. Cell Therapeutics, Inc.*,
No. C10-414MJP, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010)........................................12

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
No. C 05-02042 CRB, 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ..............................15, 17

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...................................4, 11

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) .........................................................................................3, 11

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ............................................................ *passim*

**Rules**

Fed. R. Civ. P. 23................................................................................................................ *passim*

Co-Lead Plaintiff Movants Palas[1] and Herrero respectfully submit this memorandum of law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 16); and in opposition to the competing motions of: (i) Mohammad Tayaran ("Tayaran") (Dkt. No. 12); (ii) SOJ COMPANY, LLC ("SOJ") (Dkt. No. 13); and (iii) Allen Dennis ("Dennis") (Dkt. No. 17).

### PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Canopy securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the largest financial interest in the outcome of the Action that *also* satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are Palas and Herrero, who collectively incurred losses of approximately $389,341 (calculated on a LIFO basis) in connection with their Class Period transactions in Canopy securities. *See* Dkt. No. 16-4. Although the PSLRA does not define "financial interest," courts in the Second Circuit recognize that the amount of financial loss is the most significant factor to be considered. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007); *see also Comeau v. VinFast Auto Ltd.*, No. 24 CV 2750 (NGG)(RML), 2024 WL 4654216, at *2 (E.D.N.Y. Nov. 1, 2024) (equating financial interest with monetary loss). Courts prefer the LIFO methodology for purposes of calculating losses in connection with motions for lead plaintiff appointment pursuant to the

---

[1] All capitalized terms herein are defined in Palas and Herrero's moving brief, unless otherwise indicated. *See* Dkt. No. 16-2.

PSLRA.  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011).  The table below sets forth the respective claimed losses of the competing movants:

| Movant | Loss |
|---|---|
| Palas and Herrero | $389,341 |
| Tayaran | $95,669.56 |
| Dennis | $40,858.50 |
| ~~SOJ~~ | ~~$1,462,718.36~~ |

As the above table reflects, Palas and Herrero's collective losses are more than twice as large as those incurred by all eligible competing movants **combined**.  Further, Palas and Herrero each **individually** incurred larger losses than any eligible competing movant.  *See* Dkt. No. 16-4 (showing Palas incurred losses of $269,281 calculated on a LIFO basis, whereas Herrero incurred losses of $120,060 calculated on a LIFO basis).  Although one competing movant, SOJ, claims larger losses than Palas and Herrero, SOJ is ineligible for appointment as Lead Plaintiff, irrespective of its losses, because it is inadequate and atypical under Rule 23, as well as subject to disqualifying unique defenses, as discussed below.  Accordingly, Palas and Herrero possess the largest financial interest in this Action of any eligible movant.

In addition to their considerable financial interest, Palas and Herrero readily satisfy Rule 23's typicality and adequacy requirements.  Their claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010).  Palas and Herrero's significant financial interest gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, they are aware of no conflict between their interests and those of the Class, and they have selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class.

2

*See Foley*, 272 F.R.D. at 131; *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr. 12, 2018).

Moreover, as a cohesive duo of likeminded investors, each of whom incurred significant losses as a result of the alleged fraud, Palas and Herrero constitute exactly the kind of group that the PSLRA expressly permits and courts in the Second Circuit, including this District specifically, routinely appoint to serve as co-lead plaintiffs in securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) ("[T]he most adequate plaintiff . . . is the person *or group* of persons that . . . has the largest financial interest in the relief sought by the class." (Emphasis added.)); *China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups[.]"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff").

Further demonstrating their adequacy, Palas and Herrero have submitted with their motion papers a detailed Joint Declaration, attesting to, *inter alia*, their respective backgrounds and investing experience, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, a meaningful explanation of their reasons for seeking appointment jointly as Co-Lead Plaintiffs, and their readiness to collaboratively shoulder the responsibilities of lead plaintiffs under the PSLRA, including by overseeing the efforts of counsel. *See generally* Dkt. No. 16-7. Courts routinely appoint more than one investor as co-lead plaintiffs under such circumstances.

3

*See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, 12 (E.D. Pa. Apr. 10, 2014). Courts are particularly inclined to appoint such movant groups where, as here, Palas and Herrero each individually incurred larger losses than any eligible competing movant, thereby obviating any concern that they aggregated their losses purely to meet the PSLRA's "largest financial interest" criterion. *See Peters v. Jinkosolar Holding Co.*, No. 11 CIV. 7133 JPO, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012). Further, Palas and Herrero's respective educational and professional credentials make them particularly well qualified to supervise the prosecution of this securities fraud class action (*see* Dkt. No. 16-7 ¶¶ 2-3). *See Lewitter v. Terran Orbital Corporation et al.*, No. 9:24-cv-81191 (S.D. Fla. Jan. 2, 2025), Dkt. No. 28 at 8 (appointing four-person investor group where "[t]hree out of four individuals . . . [have] experience . . . relevant to litigating against Defendant").

In stark contrast to Palas and Herrero's robust adequacy and typicality proffer, SOJ is inadequate and atypical under Rule 23, as well as subject to disqualifying unique defenses, and thus ineligible for appointment as Lead Plaintiff in this Action, irrespective of its claimed losses.

SOJ is an opaque entity that has failed to provide any meaningful information about itself for the Court to consider in evaluating its adequacy, which is sufficient reason to deny its motion. *See In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."); *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (disqualifying

4

private limited investment company that "lacks basic transparency" because it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"). All that SOJ has disclosed to the Court is that it "is a Florida LLC" and that an individual named Marcelo Najnudel ("Najnudel") is its manager. *See* Dkt. No. 14 at 6. SOJ has conspicuously made no proffer whatsoever regarding, *inter alia*, its investment or business strategies, decision-making structure, source of capital, financial wherewithal, or the beneficiary or beneficiaries of its trading profits. Further, based upon a review of SOJ's regulatory filings with the Florida Department of State's Division of Corporations ("Florida DOC"), it appears that a heretofore undisclosed Uruguayan entity named "WWM URUGUAI SAS" ("WWM") has binding control over SOJ's activities, calling Najnudel's purported unilateral authority to bind SOJ and enter into litigation on its behalf into question. The Court should deny SOJ's motion because of the litany of unanswered questions it has left regarding its ability to fairly and adequately represent the Class. *See AT&T*, 2019 WL 7759222, at *2.

Particularly concerning given SOJ's lack of transparency regarding its ownership structure, business and trading strategies is its unorthodox, high-frequency trading pattern. SOJ purchased and sold significant quantities of Canopy shares repeatedly, even during single trading sessions, plainly marking it as a pattern high-frequency day trader—that is, an investor trading with the goal of capitalizing on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations. Courts generally decline to appoint such traders as lead plaintiffs in PSLRA actions, finding them to be atypical or inadequate class representatives, or otherwise subject to unique defenses, because their trading patterns mean that they will frequently have difficulty establishing loss causation. *See, e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021) (disqualifying movant because, *inter alia*, "day

5

trading leaves him vulnerable to attacks that he did not rely on the market price in trading"); *Applestein v. Medivation, Inc.*, C10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (day traders "typically focus[] on technical price movements rather than price, and therefore are subject to a defense the they would have purchased the stock at issue regardless of the misstatement/omission" (internal quotations omitted)).  Here, SOJ executed a staggering *8,294* separate transactions in Canopy shares during the Class Period, both buying *and* selling shares on *31* of the *75* days on which it purchased shares during this period.  *See* Dkt. No. 15-2 at *3-200. On several such days, SOJ executed *more than 500 same-day transactions* to cumulatively trade hundreds of thousands of Canopy shares at a profit.  *See id.* at *58-73, *94-106.  Further, SOJ executed *well over 100* separate transactions in Canopy shares on each of *28* different days during the Class Period.  *See id.* at *8-11, *13-20, *25-49, *52-77, *82-85, *87-91, *94-118, *128-30, *132-48, *155-65, *168-70, *179-82, *185-88, *190-200.  All the foregoing demonstrates that SOJ was trading based on market volatility with the goal of realizing a short-term profit, rather than making a long-term investment in Canopy based on its business performance or Defendants' alleged misstatements like typical Class members.

The foregoing issues related to SOJ's trading are likewise disqualifying because they give rise to unique defenses that would threaten to become the focus of this litigation if the Court were to appoint SOJ as Lead Plaintiff.  The PSLRA prohibits the appointment of a lead plaintiff that is "subject to unique defenses that render [it] incapable of representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  Here, if SOJ is appointed Lead Plaintiff, the Defendants are almost certain to capitalize on its unorthodox, high-frequency trading pattern in an effort to demonstrate that SOJ did not purchase Canopy securities in reliance on the integrity of the market.  Specifically, Defendants will argue that SOJ's trading pattern deprives it of the presumption of reliance

established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247. In the best-case scenario, SOJ would be forced to devote considerable time and energy to litigating issues specific to its own trading history, at the expense of the Class's claims. There is no reason to saddle the Class with such a representative.

Palas and Herrero respectfully submit that, at a minimum, the Court should order fulsome discovery into SOJ to assess its adequacy and capability to represent the Class. The PSLRA permits this Court to order discovery into a lead plaintiff movant under circumstances where, as here, others have "demonstrate[d] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv); *see also Broadfoot v. Barrick Gold Corp.*, No. 17-cv-3507, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy"). For the litany of reasons discussed above, Palas and Herrero respectfully request that the Court permit them to serve requests for discovery regarding, *inter alia*, SOJ's organizational structure, investment and business strategies, source of capital, financial wherewithal, and the beneficiaries of its operations.

For the reasons set forth herein, Palas and Herrero respectfully submit that the Court should grant their motion in its entirety and deny the competing motions.

**ARGUMENT**

**I.   THE COURT SHOULD APPOINT PALAS AND HERRERO AS CO-LEAD PLAINTIFFS**

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at \*3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted upon proof that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate class representatives are Palas and Herrero.

**A.   Palas and Herrero Have the Largest Financial Interest of Any Eligible Movant**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  *Id.* § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Second Circuit, including this District, recognize that the amount of financial loss is the most significant factor to be considered.  *See Comverse*, 2007 WL 680779, at \*3 (recognizing most courts consider "the approximate loss a plaintiff suffered during the class period[] to be most influential in identifying the plaintiff with the largest financial interest"); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at \*1 (S.D.N.Y. Nov. 13, 2017) (same); *see also VinFast*, 2024 WL 4654216, at \*2 (equating financial interest with monetary loss).  The LIFO methodology is the preferred method for calculating losses in

8

connection with motions for lead plaintiff appointment pursuant to the PSLRA. *See Foley*, 272 F.R.D. at 129.

Under the foregoing analysis, no movant eligible for appointment as Lead Plaintiff in this Action has a larger financial interest than Palas and Herrero. As the chart at p. 2 reflects, Palas and Herrero collectively incurred losses of approximately $389,341 calculated on a LIFO basis in connection with their Class Period transactions in Canopy securities—the largest losses among the eligible competing movants by a significant margin. *See* Dkt. No. 16-4. These losses are more than twice as large as those incurred by both Tayaran and Dennis—the only eligible competing movants—***combined*** ($136,528.06). Likewise, Palas and Herrero both ***individually*** incurred larger losses than any eligible competing movant, with Palas and Herrero having incurred losses of approximately $269,281 and $120,060 as calculated on a LIFO basis, respectively. *See id.* Accordingly, whether considered collectively or individually, Palas and Herrero clearly possess the largest financial interest in this Action among those eligible for appointment as Lead Plaintiff.

Although one competing movant, SOJ, claims larger losses than Palas and Herrero, SOJ is inadequate and atypical within the meaning of Rule 23, as well as subject to disqualifying unique defenses, as discussed in detail in Section II.B., *infra*. Accordingly, SOJ is ineligible for appointment as lead plaintiff in this Action, irrespective of its claimed losses.

**B.     Palas and Herrero Satisfy the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of this litigation—and thus being the statutorily presumed "most adequate" plaintiffs (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—Palas and Herrero have plainly made the requisite *prima facie* showing that they satisfy Rule 23's typicality and adequacy requirements. *See Aude*, 2018 WL 1634872, at *3 ("The parties moving for lead plaintiff are only required to make a prima facie showing that

9

they meet Rule 23, and courts need only consider the typicality and adequacy requirements."); *Kaplan*, 240 F.R.D. at 94 (same).

Palas and Herrero's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because their claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120. Palas and Herrero, like other Class members, purchased Canopy securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Canopy's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.

Likewise, Palas and Herrero satisfy the adequacy requirement of Rule 23(a)(4) because their significant financial interest gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, they are aware of no conflict between their interests and those of the Class, and they have selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class (*see* Dkt. No. 16-8). *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2-3.

Moreover, Palas and Herrero are a cohesive duo of likeminded investors. They therefore constitute an appropriate movant group of the type expressly permitted by the PSLRA and routinely appointed to serve as co-lead plaintiffs in PSLRA actions, including in the Second Circuit, this District specifically, and around the country. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)

10

("[T]he most adequate plaintiff . . . is the person *or group* of persons that . . . has the largest financial interest in the relief sought by the class." (Emphasis added.)); *Weltz*, 199 F.R.D. at 133 ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff"); *Elan*, 236 F.R.D. at 161-63 (holding "there can be no doubt" the PSLRA permits appointment of groups, "that six members is not too unwieldy a number to effectively manage the litigation[,]" and appointing group of six as lead plaintiff); *Blue Apron*, 2017 WL 6403513, at *4 (finding group of four unrelated investors is not "so large as to be unwieldly and impracticable" and appointing said group as lead plaintiff); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 CIV. 1273(NRB), 2008 WL 2073931, at *3-4 (S.D.N.Y. May 9, 2008) (appointing group of three as lead plaintiff); *Juliar v. Sunopta Inc.*, No. 08 CIV. 1070 (PAC), 2009 WL 1955237, at *1-2 (S.D.N.Y. Jan. 30, 2009) (appointing group of two as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)). Indeed, in *China Agritech*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups". 584 U.S. at 742 n.3. More recently, in *In re Mersho*, the Ninth Circuit Court of Appeals likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff. 6 F.4th 891, 899 (9th Cir. 2021).

Further, courts in the Second Circuit, and around the country, routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via a detailed Joint Declaration. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class"); *DFC*, 2014 WL 1395059, at *7-9, *12 (appointing group and

11

noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation"). Here, Palas and Herrero have submitted a detailed Joint Declaration in which they, *inter alia*:

- Provide detailed information about themselves, including their educational and professional backgrounds, cities and states of residence, ages, and investment experience (*see* Dkt. No. 16-7 ¶¶ 2-3);

- Explain their reasons for seeking appointment jointly as co-lead plaintiffs (*id.* ¶ 9) ("We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experience*** by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations pleaded in the complaint, and consulting with our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and experience, as well as our ability to engage in joint decision-making, will materially benefit and advance the interests of the Class*** in this case." (Emphases added.)); and

- Attest in detail to their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to undertake those responsibilities (*id.* ¶¶ 4-7, 11-13).

Additionally, investor groups are particularly appropriate where a member of the group—here, both Palas ***and*** Herrero—individually incurred larger losses than any other eligible competing movant, thus obviating any concern that the group aggregated their losses purely to meet the PSLRA's "largest financial interest" criterion. *See, e.g.*, *Jinkosolar*, 2012 WL 946875, at *9 (appointing group of four investors "where the group comprises the class members with, far and away, the largest financial interest of any individual or group"); *Elan*, 236 F.R.D. at 162 ("Neither is there any evidence that the [movant g]roup was formed in bad faith. Indeed, even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest' pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(iii)."); *Sabbagh v. Cell Therapeutics,*

12

*Inc.*, No. C10-414MJP, 2010 WL 3064427, at *7 (W.D. Wash. Aug. 2, 2010) ("The Court's confidence . . . is further bolstered by the fact that it does not appear that this group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any of the other applicants. In actuality, two of the members . . . have *individual losses* . . . which exceed the financial interests of all other applicants[.]" (Emphasis in original.)); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) ("[I]t is not necessary for the members of the [movant group] to aggregate themselves in order to overcome the largest stake requirement—one of its members could meet that requirement by herself.").

Finally, Palas and Herrero's joint leadership of this Action will plainly benefit the Class because they are sophisticated investors with complementary backgrounds in finance and law, respectively—both of which are obviously pertinent to prosecuting securities fraud class actions. *See* Dkt. No. 16-7 ¶¶ 2-3; *Lewitter v. Terran Orbital Corporation et al.*, No. 9:24-cv-81191 (S.D. Fla. Jan. 2, 2025), Dkt. No. 28 at 8 (appointing four-person investor group where "[t]hree out of four individuals . . . [have] experience . . . relevant to litigating against Defendant"). Palas is a Certified Financial Planner and Certified Public Accountant whose financial expertise is further bolstered by his Series 7 registration,[2] evidencing his securities and investment-related professional expertise. Dkt. No. 16-7 ¶ 2. Herrero, meanwhile, has a law degree, works as a notary public, and has prior experience participating in class actions alleging fraud-related claims, like the instant Action, against the managers of entities he invested in. *See id.* ¶ 3. Indeed, Palas and

---

[2] Series 7 registration denotes the competency of an individual to perform the critical functions of a general securities representative, including sales of corporate securities, municipal securities, investment company securities, variable annuities, direct participation programs, options and government securities. *See Series 7 – General Securities Representative Exam*, FINRA, https://www.finra.org/registration-exams-ce/qualification-exams/series7 (last visited June 12, 2025).

Herrero **both** have prior experience hiring and working with counsel, including in connection with litigation. *Id.* ¶¶ 2-3. Further, they each have at least twenty years of investment experience, with nearly half a century of investment experience between them. *See id.* Accordingly, Palas and Herrero are both sophisticated investors with complementary backgrounds and highly relevant experience that will undoubtedly benefit the Class through their joint oversight of this Action.

* * * *

Because Palas and Herrero have the largest financial interest in the relief sought by the Class among those eligible for appointment as Lead Plaintiff, and otherwise satisfy the applicable requirements of Rule 23, they are the presumptive "most adequate" plaintiffs within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To overcome the strong presumption entitling them to appointment as Co-Lead Plaintiffs, the PSLRA requires "***proof***" that they are inadequate. *Id.* § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.    THE COURT SHOULD DENY THE COMPETING MOTIONS

### A.    No Eligible Competing Movant Claims a Larger Financial Interest than Palas and Herrero

As discussed further in Section I.A., *supra*, no competing movant eligible for appointment as Lead Plaintiff claims a larger financial interest in this Action than Palas and Herrero. This fact alone mandates denial of the competing motions by Tayaran (Dkt. No. 12) and Dennis (Dkt. No. 17). Although SOJ claims larger losses than Palas and Herrero, it is ineligible for appointment as Lead Plaintiff irrespective of its losses because it is inadequate and atypical within the meaning of Rule 23 and subject to disqualifying unique defenses, as discussed in detail below.

14

**B.      SOJ Is Inadequate, Atypical, and Subject to Disqualifying Unique Defenses**

**1.      SOJ's Opacity Makes It Inadequate Under Rule 23**

SOJ has failed to provide any meaningful information about itself for the Court to evaluate its adequacy to oversee the fraud claims in this Action. While the standard for evaluating adequacy at the lead plaintiff appointment stage is *prima facie*, courts have nevertheless denied motions by movants that have provided *no* meaningful information about themselves. Indeed, "ample case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication." *HEXO*, 2020 WL 5503634, at *1; *see also AT&T*, 2019 WL 7759222, at *2 (disqualifying private limited investment company that "lacks basic transparency" because it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *11-12 (N.D. Cal. Jan. 12, 2006) (rejecting lead plaintiff movant with the greatest financial interest after concluding that it "will not adequately represent the interests of the plaintiff class" where questions existed as to, *inter alia*, its "authority, transparency, and structure"); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (disqualifying movants who "provided *no* information about themselves[,]" finding subsequent proffer in additional filings was "conclusory and problematic" and reflected a "lack of involvement" in the litigation (emphasis in original)); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (denying motion where "[t]he complete dearth of information accompanying the [movants'] lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation"); *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295,

15

1305 (M.D. Fla. 2000) (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience").

*AT&T* is particularly instructive.   There, in considering competing motions for lead plaintiff appointment under the PSLRA, the court denied a motion by a private limited investment company that asserted in its briefing that it satisfied the Rule 23 adequacy standard, yet provided no meaningful information about itself:

> Pro-Alpha has not provided sufficient information for the Court to determine that it will fairly and adequately protect the interests of the class . . . . [I]t is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation . . . . The Court declines to appoint as lead-plaintiff an entity that lacks basic transparency even at this juncture.

*AT&T*, 2019 WL 7759222, at *2 (internal quotations and citations omitted).

Here, as in *AT&T*, SOJ has conspicuously offered *no* meaningful information about itself from which the Court can gauge its adequacy to oversee this Action on behalf of a Class of potentially hundreds or thousands of injured investors.  All that SOJ has told the Court is that it "is a Florida LLC" and that Najnudel is its manager. Dkt. No. 14 at 6.  Although SOJ has described Najnudel's investment experience and purported status as SOJ's manager to the Court (and nothing else) (*see id.*), Najnudel is *not* the movant in this Action—SOJ is. Accordingly, SOJ "has failed to provide any information, beyond the name of a [manager], as to its business, management, structure, or its experience with securities litigation." *AT&T*, 2019 WL 7759222, at *2.  This concerning lack of transparency contrasts sharply with the detailed adequacy proffer that Palas and Herrero made in their Joint Declaration, wherein they detail, *inter alia*, their financial and legal backgrounds and investment experience.  *See* Dkt. No. 16-7.

SOJ, meanwhile, has left the Court to guess at various important considerations related to its fitness and ability to pursue fraud claims on behalf of the Class, including, *inter alia*, its business

16

and investment strategies (which are plainly unorthodox, given SOJ's high-frequency trading patterns (*see infra* at Section II.B.2.)), beneficiaries, source of capital, and financial wherewithal to continue operations, despite its claimed investment loss of over a million dollars in Canopy securities.  Indeed, SOJ is an opaque entity that has left the Court with more questions than answers regarding its adequacy:  Is SOJ a going concern, not only for itself, but potentially the entire Class following its appointment as Lead Plaintiff?  Will SOJ exist a few years, or even a few months, from now?  Is anyone, including or other than Najnudel, authorized to make unilateral decisions on behalf of SOJ?  Who is the ultimate beneficiary of SOJ's trading or other (unspecified) business profits, and where are those profits held?  Are they offshore?  What other business activities does SOJ engage in apart from investing in Canopy securities?  With these and other questions left unanswered, SOJ remains an opaque entity that has failed to establish its adequacy to oversee this Action.  *See AT&T*, 2019 WL 7759222, at *2 (disqualifying private limited investment company that "lacks basic transparency" because it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *Brocade*, 2006 WL 7348107, at *11-12 (disqualifying movant where questions existed as to its "authority, transparency, and structure").

The litany of unanswered questions about SOJ creates a substantial risk that this Action could be derailed at later stages of the litigation.  *See DraftKings*, 2021 WL 5282006, at *10 (disqualifying movant where the mere "specter of . . . attacks . . . would loom large were he to be a proxy for the class").  For example, while a review of SOJ's regulatory filings with the Florida DOC reveals little to nothing about its business, it ***does*** reveal that an entity based in Uruguay,

WWM, is SOJ's "AMBR"—meaning authorized member.[3]   Critically, in the case of Floridian LLCs, the title AMBR "indicat[es] a member with decision-making authority in the company." *Understanding the Title AMBR in LLC Management*, UpCounsel, https://www.upcounsel.com/ambr-meaning-llc (last visited June 13, 2025).   "Designating an individual as 'AMBR' implies that they are granted the legal authority to act on behalf of the LLC, including signing contracts, making binding decisions, and representing the LLC in legal matters." *Id.*   "This designation must be made thoughtfully, ensuring compliance with Florida's state requirements." *Id.*   Accordingly, this Uruguayan entity, heretofore undisclosed to the Court, presumably has binding, decision-making authority over SOJ's business, operations, and legal affairs, including its participation in the instant Action.   Yet, SOJ chose ***not*** to disclose WWM's existence and has provided ***no*** information regarding this entity, much less the division of authority between WWM and Najnudel over SOJ's affairs.   Accordingly, Najnudel's purported unilateral authority to bind SOJ and enter into litigation on its behalf, including through his execution of SOJ's shareholder Certification, is questionable at best.   Indeed, even the information provided regarding Najnudel is sparse.   SOJ does not provide his place of residence, his current employment or any other information sufficient to determine whether he can act in a fiduciary capacity in this Action (assuming he intends to do so).

The dearth of information that SOJ has offered to the Court about itself exacerbates the existing ambiguities concerning SOJ's decision-making structure and members—issues that should have been clear from the outset of SOJ's participation in this Action.   This is precisely why courts in the Second Circuit "require[] a threshold amount of information regarding an individual

---

[3]   *Title Abbreviations*, Division of Corporations, Florida Department of State, https://dos.fl.gov/sunbiz/search/guides/corporation-records/title-abbreviations/ (last visited June 13, 2025).

movant's background" for "even a preliminary showing of adequacy[.]" *HEXO*, 2020 WL 5503634, at \*1; *see also AT&T*, 2019 WL 7759222, at \*2. Without necessary information to clear these and other ambiguities, there is a non-speculative risk that SOJ could lose control of this Action at a later stage in the litigation—for example, if the Court or Defendants discover that SOJ was not properly authorized to participate in this Action in the first place.

### 2. SOJ's Unorthodox, High-Frequency Trading Pattern Renders It Atypical of the Class It Seeks to Represent

SOJ is further disqualified from consideration because its Class Period transactions in Canopy securities reflect highly unorthodox trading patterns, rendering it atypical and subject to unique defenses. In particular, SOJ purchased ***and*** sold Canopy shares at high volumes during single trading days—occasionally at a handsome profit—making it a pattern high-frequency day trader. Courts generally deny lead plaintiff motions by day traders, as such investors are "vulnerable to attacks that [they] did not rely on the market price in trading [in the subject securities], which could 'sever[ ] the link between the alleged misrepresentation and ... [the movant's] decision to trade at a fair market price.'" *DraftKings*, 2021 WL 5282006, at \*10 (quoting *Basic*, 485 U.S. at 248); *see also Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) (finding movant's "status as a ***potential*** 'day trader[]' . . . may . . . subject [him] to unique defenses that make him an inappropriate lead plaintiff" (emphasis added)); *Applestein*, 2010 WL 3749406, at \*3 (day traders "typically focus[] on technical price movements rather than price, and therefore are subject to a defense the they would have purchased the stock at issue regardless of the misstatement/omission" (internal quotations omitted)); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at \*11 (N.D. Cal. Aug. 22, 2008) (finding a "day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility.

Specifically, it may be subject to a unique defense regarding its reliance upon publicly available information."); *Hurst v. Enphase Energy*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *7-8 (N.D. Cal. Nov. 30, 2020) (same); *see also Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (finding movant fund failed to demonstrate adequacy because it "may be unable to demonstrate loss causation").

Here, SOJ executed a staggering *8,294* separate transactions in Canopy shares during the Class Period, both purchasing *and* selling Canopy shares on *31* of the *75* days that it purchased shares during this period. *See* Dkt. No. 15-2 at *3-200. On several such days, SOJ executed *over 500* separate transactions to cumulatively trade hundreds of thousands of shares at a profit. *See id.* at *58-73, *94-106. In total, SOJ made a profit on *11* (*i.e.*, over a third) of the *31* days that it both purchased and sold Canopy shares, having sold more Canopy shares than it purchased on each such date:

| Date | Shares Purchased (Number of Separate Trades) | Amount Expended | Shares Sold (Number of Separate Trades) | Amount Earned | Profit |
|---|---|---|---|---|---|
| 8/5/2024 | 36,000 (46) | $222,856.11 | 124,669 (593) | $718,706.71 | $495,850.60 |
| 8/27/2024 | 40,000 (27) | $223,800 | 150,402 (486) | $787,167.26 | $563,367.26 |
| 9/18/2024 | 20,000 (40) | $99,358 | 29,341 (55) | $140,076.87 | $40,718.87 |
| 10/4/2024 | 400 (2) | $1,840 | 454 (2) | $2,006.68 | $166.68 |
| 10/25/2024 | 405,800 (108) | $2,179,481.31 | 414,463 (239) | $2,200,723.62 | $21,242.31 |
| 10/28/2024 | 3,500 (4) | $19,065 | 10,184 (10) | $54,802.08 | $35,737.08 |
| 10/30/2024 | 2,700 (3) | $14,310 | 14,863 (23) | $72,711.04 | $58,401.04 |
| 11/6/2024 | 6,300 (4) | $27,657 | 155,253 (431) | $656,323.02 | $628,666.02 |
| 11/14/2024 | 6,900 (13) | $27,183 | 16,519 (14) | $61,942.56 | $34,759.56 |
| 11/18/2024 | 10,000 (4) | $38,474 | 11,352 (8) | $43,030.08 | $4,556.08 |
| 12/2/2024 | 5,000 (4) | $19,100 | 7,734 (25) | $29,270.45 | $10,170.45 |

*See id.* at *58-73, *94-106, *118-20, *131, *140-50, *155-65, *172, *174-75.  As shown above, on August 5, 2024, SOJ purchased **36,000** Canopy shares via **46** separate transactions and sold **124,669** Canopy shares via **593** separate transactions for a profit of **$495,850.60**.  *See id.* at *58-73.  Likewise, on August 27, 2024, SOJ purchased **40,000** Canopy shares via **27** separate transactions and sold **150,402** Canopy shares via **486** separate transactions for a profit of **$563,367.26**.  *See id.* at *94-106.

Further illustrating the extent of SOJ's high-frequency trading, over the course of just ***two days***, SOJ again made ***well over 500*** separate transactions in Canopy shares: on October 24, 2024, SOJ purchased **188,936** Canopy shares via **186** separate transactions and sold **188,233** Canopy shares via **138** separate transactions (*see id.* at *132-40), and ***the next day***, SOJ purchased an additional **405,800** Canopy shares via **108** separate transactions and sold **414,463** Canopy shares via **239** separate sales transactions (*see id.* at *140-48).  SOJ also made ***well over 100*** separate transactions in Canopy shares on each of **28** different dates during the Class Period—*i.e.*, over a third of the total number of days on which it purchased Canopy shares during this period.  *See id.* at *8-11, *13-20, *25-49, *52-77, *82-85, *87-91, *94-118, *128-30, *132-48, *155-65, *168-70, *179-82, *185-88, *190-200.  Notably, SOJ failed to offer even basic information about its business and investment strategies, which may have cleared any confusion as to why it engaged in such unorthodox, high-frequency trading during the Class Period.

Given the sheer volume of same-day purchases and sales listed in the ***198-page*** schedule setting forth SOJ's approximately **8,294** Class Period transactions in Canopy shares (*see* Dkt. No. 15-2 at *3-200), it is clear that SOJ was trading based on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations.  *See DraftKings*, 2021 WL 5282006, at *10 (disqualifying movant that engaged in day trading because such trading "could 'sever[ ] the

21

link between the alleged misrepresentation and ... [his] decision to trade at a fair market price'" (quoting *Basic*, 485 U.S. at 248)); *Farhar v. Ontrak, Inc.*, No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589, at *4 (C.D. Cal. July 13, 2021) (finding movant that purported to have the largest financial interest was "not a typical plaintiff under Fed. R. Civ. P. 23 because he [was] a high frequency trader that may be subject to unique defenses" (citing *Applestein*, 2010 WL 3749406, at *3)); *see also FalconStor*, 277 F.R.D. at 241 (finding that a movant fund failed to demonstrate adequacy because it "may be unable to demonstrate loss causation").  SOJ's unorthodox, high-frequency trading pattern renders it atypical of the Class that it seeks to represent.  A typical Class member in this litigation would have simply purchased Canopy securities in reliance upon the Defendants' statements, in the good-faith expectation that those shares would appreciate in value.  By contrast, SOJ's trading pattern demonstrates that it was trading based on market volatility with the goal of realizing a short-term profit, rather than making a long-term investment in Canopy based on its business performance or Defendants' alleged misstatements.  SOJ's unorthodox trading strategies, coupled with its lack of transparency regarding these trading strategies, thus make it exceptionally ill-suited to serve as a Class representative.

### 3.    SOJ Is Subject to Disqualifying Unique Defenses Based on Its Unorthodox, High-Frequency Trading Pattern

SOJ's status as a day trader that engaged in unorthodox, high-frequency trading not only renders it atypical of the Class it seeks to represent, it also subjects SOJ to unique defenses that further mandate denial of its motion.  The PSLRA precludes the appointment of a lead plaintiff who is "subject to unique defenses that render [it] incapable of representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 WL 627960,

22

at *6 (N.D. Ill. Mar. 15, 2005); *see also DraftKings*, 2021 WL 5282006, at *10 (disqualifying movant where the mere "specter of . . . attacks . . . would loom large were he to be a proxy for the class"); *Teva*, 302 F. Supp. 3d at 504 n.10 ("The merits of whether the day trading defense is actually the prevailing law within the Circuit . . . is not necessarily relevant. Rather, the question is whether the appointment of a particular lead plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would unnecessarily complicate and/or stall the litigation."); *In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC *et al.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 26, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial.  The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." (internal citations omitted)).

Here, as discussed *supra*, SOJ employed an unusual, high-frequency trading strategy with respect to its Class Period investments in Canopy securities.  If the Court were to appoint SOJ as Lead Plaintiff, then this strategy will give Defendants ample ammunition to use at the class certification stage of this litigation, when they will inevitably argue that SOJ plainly cannot be entitled to rely on the *Basic* presumption of reliance premised upon "fraud-on-the-market."

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.  Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action."  To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted).

23

The *Basic* court held that "*[a]ny* showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248 (emphasis added).  In *Basic*, which involved news of a corporate merger, the court stated, for example, that a plaintiff who was aware of the truth of the merger discussions "but sold his shares nevertheless because of unrelated concerns . . . *could not be said to have relied upon the integrity of the price he knew had been manipulated*." *Id.* at 249 (emphasis added).  Here, on *Basic's* rationale, SOJ's high-frequency day trading raises serious questions about its reliance on the Defendants' alleged misstatements, as it suggests that SOJ's trading strategies were designed to capitalize on short-term fluctuations in the price of Canopy shares, and thus that SOJ would have traded as it did *irrespective of the Defendants' alleged misstatements*.  *See DraftKings*, 2021 WL 5282006, at *10 (disqualifying movant because, *inter alia*, "day trading leaves him vulnerable to attacks that he did not rely on the market price in trading DraftKings, which could 'sever[ ] the link between the alleged misrepresentation and ... [his] decision to trade at a fair market price'" (quoting *Basic*, 485 U.S. at 248); *Teva*, 302 F. Supp. 3d at 504 n.10 (finding movant's "status as a *potential* 'day trader[]' . . . may . . . subject [him] to unique defenses that make him an inappropriate lead plaintiff" (emphasis added)); *Enphase*, 2020 WL 7025085, at *7-8  (same); *see also FalconStor*, 277 F.R.D. at 241 (finding that a movant fund failed to demonstrate adequacy because it "may be unable to demonstrate loss causation").

SOJ's transactions in Canopy securities are at best idiosyncratic.  If SOJ is appointed as Lead Plaintiff, Defendants will inevitably attempt to rebut the *Basic* presumption by demonstrating that SOJ's unorthodox investment decisions were *not* made in reliance upon the Defendants' alleged misrepresentations.  In the worst-case scenario, the Defendants will succeed in doing so,

24

to the obvious prejudice of the Class. Even in the best-case scenario, SOJ would be forced to devote considerable time and energy to litigating issues that are unique to its own Class Period investment strategy, at the expense of prosecuting the Class's fraud claims. There is no reason to saddle the Class in this litigation with a Lead Plaintiff subject to these unique defenses.

### 4. Discovery into SOJ Is Warranted

Palas and Herrero respectfully submit that, at minimum, they have "demonstrate[d] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class[,]" thereby entitling them to take discovery into whether SOJ is indeed the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iv). The PSLRA permits this Court to order discovery into a lead plaintiff movant under such circumstances. *See id.*; *see also Barrick*, 2017 WL 3738444, at *1 (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy"); *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 990 (M.D. Tenn. 2016) (same).

Here, Palas and Herrero have demonstrated that SOJ is atypical, inadequate, and/or subject to various disqualifying unique defenses for a litany of reasons related to its opacity regarding ownership, managerial control, investment strategy and trading patterns. To the extent that the Court believes additional information would assist its "most adequate plaintiff" analysis pursuant to the PSLRA, then the foregoing issues at a minimum demonstrate "a reasonable basis for a finding that [SOJ] is incapable of adequately representing the class" such that discovery is warranted. 15 U.S.C. § 78u-4(a)(3)(B)(iv). Palas and Herrero thus respectfully request that the Court grant them the ability to serve discovery requests with respect to, *inter alia*, SOJ's investment and business strategies, decision-making structure, source of capital, financial wherewithal, and the ultimate beneficiaries of its operations. Should the Court grant Palas and

25

Herrero's request for discovery, they further request that the Court permit additional briefing to allow the movants to address any new information revealed in the course of discovery.

**CONCLUSION**

For the foregoing reasons, Palas and Herrero respectfully request that the Court issue an Order: (1) appointing Palas and Herrero as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated:  June 17, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Adam Palas and Carlos Luis Acero Herrero and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Adam Palas*

26

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Adam Palas and Carlos Luis Acero Herrero, certifies that this brief contains 8,157 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on June 17, 2025.

/s/ *J. Alexander Hood II*
J. Alexander Hood II