UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE D. BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No.  1:25-cv-01877-AMD-LKE |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF ADAM PALAS AND CARLOS LUIS ACERO HERRERO FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................ 3

      I.     PALAS'S LOSSES IN CANOPY OPTIONS IS NOT DISQUALIFYING .......... 3

      II.    SOJ IS INADEQUATE, ATYPICAL, AND SUBJECT TO DISQUALIFYING UNIQUE DEFENSES ............................................................................................. 7

CONCLUSION ...................................................................................................................... 11

CERTIFICATE OF WORD COUNT ..................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
C10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)..............................................9

*Aude v. Kobe Steel, Ltd.*,
17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) .....................................................1

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................9, 10, 11

*Broadfoot v. Barrick Gold Corp.*,
No. 17-cv-3507, 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017).................................................11

*Cook v. Allergan PLC*,
No. 18 CIV. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ...............................6

*Deutschman v. Beneficial Corp.*,
132 F.R.D. 359 (D. Del. 1990) .........................................................................................4, 5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
No. 20 CIV. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)...............................6

*DT v. Somers Cent. Sch. Dist.*,
No. 06CIV2674WCCECFCASE, 2009 WL 10706891 (S.D.N.Y. Feb. 11, 2009),
*aff'd*, 348 F. App'x 697 (2d Cir. 2009)..................................................................................9

*Flora v. Hain Celestial Grp., Inc.*,
No. 16CV4581ADSSIL, 2017 WL 11816987 (E.D.N.Y. June 5, 2017).............................2, 3

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................4

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)...............................................................................9, 11

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)................................................................................2, 3

*Gross v. AT&T Inc.*,
No. 19-CV-2892 (VEC), 2019 WL 7759222 (S.D.N.Y. June 24, 2019)..............................7, 8

*Haideri v. Jumei International Holding Limited*,
No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020)...................................8

ii

*Hall v. Medicis Pharm. Corp.*,
No. CV08-1821PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ................................3

*In re Bally Total Fitness Sec. Litig.*,
Nos. 04 C 3530 *et al*., 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ........................................10

*In re HEXO Corp. Sec. Litig.*,
No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ..............................7

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) .....................................4

*Lawless v. Aurora Cannabis Inc.*,
No. CV2013819RMBSAK, 2021 WL 2850451 (D.N.J. July 8, 2021) ................................2, 6

*Medina v. Clovis Oncology, Inc.*,
No. 15-CV-2546-RM-MEH, 2016 WL 660133 (D. Colo. Feb. 18, 2016) ...............................3

*Mitchell v. Complete Mgmt., Inc.*,
No. 99 CIV. 1454 (DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999)..................................6

*Rodriguez v. DraftKings Inc.*,
No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)...........................9, 10

## **Statutes**

15 U.S.C. § 78u-4 ..............................................................................................................11

PSLRA .................................................................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 23.................................................................................................... *passim*

Co-Lead Plaintiff Movants Palas[1] and Herrero respectfully submit this reply memorandum of law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 16).

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" **and** has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at *3-4 (S.D.N.Y. Apr. 4, 2018).  This presumption is rebuttable by "proof" that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed at length in their moving and opposition briefs (Dkt. Nos. 16-2, 21), Palas and Herrero are the ***only*** movants who satisfy the statutory criteria to be entitled to the "most adequate plaintiff" presumption.  First, Palas and Herrero have the largest financial interest in this litigation of any eligible movant, considered either in the aggregate ($389,341) or individually ($269,281 and $120,060, respectively).  Second, as discussed in their moving and opposition briefs, Palas and Herrero have demonstrated their typicality and adequacy under Rule 23.  *See* Dkt. Nos. 16-2 at 7-10; 21 at 2-4, 9-14.   Although one competing movant, SOJ, claims larger losses than Palas and Herrero, SOJ is inadequate and atypical within the meaning of Rule 23 and subject to disqualifying unique defenses (as discussed at length in Palas and Herrero's opposition brief

---

[1] All capitalized terms herein are defined in Palas and Herrero's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 16-2, 21.

1

(*see* Dkt. No. 21 at 4-7, 15-25)) and thus ineligible for appointment as Lead Plaintiff, irrespective of its losses.

Nevertheless, competing movants SOJ and Tayaran oppose Palas and Herrero's motion. *See* Dkt. Nos. 19-20.  Tayaran claims that Palas and Herrero "fail to satisfy the typicality prong of Rule 23 because the majority of their losses stem from option transactions, and not common stock." Dkt. No. 19 at 9.  Yet courts, including in this District, routinely appoint investors that suffered most, or even all, of their losses on options investments as lead plaintiffs where, as here, the class definition encompasses options investors and the movant's particular options transactions do not differentiate their interests from those of other class members.  *See, e.g.*, *Flora v. Hain Celestial Grp., Inc.*, No. 16CV4581ADSSIL, 2017 WL 11816987, at *1 (E.D.N.Y. June 5, 2017) (appointing co-lead plaintiffs despite one of them having "only purchased options"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355, 357 (S.D.N.Y. 2011) (appointing options investor as lead plaintiff, noting "the focus of the typicality analysis is . . . whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful  course of conduct" (internal quotation marks omitted)).  Moreover, while Palas incurred losses on his options investments his co-movant Herrero incurred all of his losses on ***stock*** transactions, so their appointment as co-lead plaintiffs will ensure that the interests of both common stock and options investors are well represented throughout this litigation.  *See Lawless v. Aurora Cannabis Inc.*, No. CV2013819RMBSAK, 2021 WL 2850451, at *5 (D.N.J. July 8, 2021) (recognizing that appointing co-lead plaintiffs "has certain advantages . . . including avoiding the re-determination of lead plaintiff if an individual lead plaintiff is unable to serve or is deemed inadequate").

SOJ, meanwhile, asserts that it "satisfies the requirements of Rule 23" and that "[n]o proof has been presented that [it] would be inadequate or subject to unique defenses."  Dkt. No. 20 at 4-

2

5.  Yet as discussed at length in Palas and Herrero's opposition brief, SOJ is an opaque investment entity that has made a nearly non-existent adequacy proffer, and whose unorthodox trading activity both renders it atypical and subjects it to disqualifying unique defenses.  *See* Dkt. No. 21 at 4-7, 15-25.

For the reasons set forth herein, Palas and Herrero respectfully submit that the Court should grant their motion in its entirety and deny the competing motions.

**ARGUMENT**

**I.    PALAS'S LOSSES IN CANOPY OPTIONS IS NOT DISQUALIFYING**

The fact that Palas incurred most of his losses in connection with Class Period investments in Canopy option contracts does not render Palas and Herrero—nor Palas individually—atypical under Rule 23.  Courts throughout the country, including in this District, routinely appoint movants who suffered most, or even ***all***, of their losses on options investments to serve as lead plaintiff in PSLRA cases.  *See, e.g.*, *Hain*, 2017 WL 11816987, at *1 (appointing co-lead plaintiffs, finding "the fact that [one of them] ***only*** purchased options during the class period does not rebut the presumption in its favor" (emphasis added)); *Puda*, 827 F. Supp. 2d at 355, 357 (appointing options investor as lead plaintiff, noting "the focus of the typicality analysis is . . . whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful  course of conduct" (internal quotation marks omitted)); *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4-6 (D. Ariz. Mar. 11, 2009) (appointing options holder as lead plaintiff instead of common stock investor because the latter failed "to offer any evidence that [option holder]'s specific options are themselves atypical"); *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546-RM-MEH, 2016 WL 660133, at *3 (D. Colo. Feb. 18, 2016) (appointing lead plaintiff that "may have held securities that other members of the class did not, such as options . . . [because] the losses allegedly incurred on those securities are still premised on the same factual allegations

3

and legal theories"); *see also Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (certifying class of options and common stock purchasers with class representative who purchased *only* options).

Nothing about Palas's options transactions disqualifies him as a Class representative. The adequacy inquiry focuses on whether "there is [any] conflict between the proposed lead plaintiff and the members of the class; and [whether] the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Here, Tayaran has identified *no* conflict between Palas's interests and those of the Class (and indeed, there is none), and with an undisputed investment loss of $269,281, Palas plainly has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. The Complaint in this Action defines the Class as all investors "that purchased or otherwise acquired Canopy *securities*" during the Class Period. Dkt. No. 1 ¶ 1 (emphasis added). Given this expansive Class definition, the Class will necessarily consist of investors who purchased different types of securities, including common stock *and* options. Palas, having incurred losses on both common stock *and* options, is thus well suited to represent the interests of *all* class members.

Moreover, nothing about Palas's options investments makes him atypical of the Class. The test for typicality is whether a movant's claim "'arises from the same course of events'" as those of other class members and relies on "'similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Palas's options trading was limited to purchasing Canopy *call* option contracts (with one sale), which gave him the right—although not the obligation—to purchase Canopy common stock at specific prices

4

within a certain time period, allowing him to profit if the share price exceeded the strike price before the expiration of the option.  Specifically, Palas purchased 2,050 Canopy call option contracts during the Class Period—an investment strategy consistent with a view that the Company's share price would increase during the Class Period.  *See* Dkt. No. 16-4 at *2-3; Dkt. No. 16-6 at *4.  "[B]oth call option purchasers and stock purchasers hope to profit from an *increase* in the market price of the underlying security." *Beneficial Corp.*, 132 F.R.D. at 371 (emphasis in original).  Additionally, "the premium, or price of [a call] option contract is directly responsive to the market price of the underlying security and to information affecting that price" and, "[c]onsequently, [call] option traders, like purchasers of the underlying security, are susceptible to misrepresentations which distort the market price" and "can invoke the fraud on the market theory." *Id.* at 371.  Palas held 1,850 Canopy call option contracts as of February 7, 2025, when the truth regarding Defendants' alleged fraud emerged, thereby causing the price of Canopy securities to plummet (*see* Dkt. No. 1 ¶¶ 6-8, 54-56), and suffered a significant *$245,217* investment loss on these options transactions as a result.  *See* Dkt. No. 16-4 at *2-3; Dkt. No. 16-6 at *4.  Palas, like all Class members, thus invested in Canopy securities in reliance upon Defendants' positive Class Period statements about the Company in the good-faith expectation that Canopy's stock price would increase and suffered losses when the truth emerged via the revelation of the fraud alleged in the Complaint.  *See generally* Dkt. No. 1.  Palas is thus a wholly typical Class member within Rule 23's meaning.

The cases upon which Tayaran relies involved movants who ***sold put*** options—that is, contracts conveying the right to ***sell*** securities at a predetermined price within a specific time frame.  *See* Dkt. No. 19 at 9-10.  Unlike the purchase of call options, the sale of put options is a bet that the Company's shares will decline, reflecting a trading strategy that differentiates such an

investor from a typical class member. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 CIV. 5865 (NRB), 2020 WL 7698321, at \*4 (S.D.N.Y. Dec. 28, 2020) (denying motion, finding that movant's *sales* of *put* options raised questions existed regarding "whether [movant] was motivated by the same market incentives as [other] class members" (emphases added)); *Cook v. Allergan PLC*, No. 18 CIV. 12089 (CM), 2019 WL 1510894, at \*1-2 (S.D.N.Y. Mar. 21, 2019) (rejecting movant whose options trading "included *sales* of *both puts* *and* *calls* during the same time period" which competing movant argued was "self-contradictory and unusual" (emphases added)).

Finally, even assuming *arguendo* that incurring most of his losses on investments in Canopy options contracts might raise concerns about Palas's fitness to represent a Class consisting of both common stock and options investors (and as discussed *supra*, it does not), his appointment as a Co-Lead Plaintiff alongside Herrero—who incurred *all* of his $120,060 investment losses on transactions in Canopy common stock—should allay any such speculative concerns. *See Aurora Cannabis*, 2021 WL 2850451, at \*5 ("[T]he appointment of a small group of individuals as lead plaintiff has certain advantages over the appointment of a single individual, including avoiding the re-determination of lead plaintiff if an individual lead plaintiff is unable to serve or is deemed inadequate after appointment."); *see also Mitchell v. Complete Mgmt., Inc.*, No. 99 CIV. 1454 (DAB), 1999 WL 728678, at \*3 (S.D.N.Y. Sept. 17, 1999) ("The Court recognizes that appointing a group of people as co-lead plaintiffs is not only allowable under the PSLRA, but often beneficial."). Because Herrero's losses stem solely from common stock, his appointment alongside Palas will ensure that the Class's leadership includes investors strongly incentivized to pursue recovery of both common stock and options losses, and that it will remain well represented

6

throughout the pendency of this litigation, should any questions as to Palas's typicality or adequacy arise at a later stage.

## II.    SOJ IS INADEQUATE, ATYPICAL, AND SUBJECT TO DISQUALIFYING UNIQUE DEFENSES

Contrary to SOJ's claim that it "satisfies the requirements of Rule 23" and that "[n]o proof has been presented that SOJ would be inadequate or subject to unique defenses[,]" (Dkt. No. 20 at 4-5), Palas and Herrero have extensively detailed in their opposition brief that SOJ *is* inadequate, atypical, **and** subject to disqualifying unique defenses, and is therefore ineligible for appointment as lead plaintiff, irrespective of its financial interest.  *See* Dkt. No. 21 at 4-7, 15-25.  Specifically, SOJ is an opaque, high-frequency day trader whose submissions to date have left the Court with more questions than answers as to key points regarding its adequacy.

Courts in the Second Circuit have "decline[d] to appoint as lead-plaintiff [movants] that lack[] basic transparency even at this juncture." *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (disqualifying private limited investment company because it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *see also In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication.").

Here, nearly three weeks after filing its initial motion papers and over two rounds of briefing, SOJ has *still* failed to provide any meaningful information about itself for the Court to evaluate its adequacy.  The only information that SOJ has provided to the Court about itself is that it "is a Florida LLC" and that Najnudel is its manager.  Dkt. No. 14 at 6.  Accordingly, SOJ, like

7

the investment company in *AT&T*, "has failed to provide any information, beyond the name of a [purported manager], as to its business, management, structure, or its experience with securities litigation." *AT&T*, 2019 WL 7759222, at *2.  Indeed, SOJ has left unanswered numerous questions regarding, *inter alia*, its investment and business strategies, its ownership and decision-making structure, its source of capital, its financial wherewithal, and the beneficiary or beneficiaries of its trading profits—all of which are highly relevant to its adequacy as a representative on behalf of a Class of potentially hundreds or thousands of injured investors.  *See* Dkt. No. 21 at 5, 16-17.  Moreover, SOJ's regulatory filings with the Florida DOC confirm that WWM, an undisclosed Uruguayan entity, is an "Authorized Member" of SOJ, indicating that it has binding control over SOJ's business, legal, and financial affairs, despite Najnudel's purported status as its manager.  *See* Dkt. No. 21 at 17-18; *see also Detail by Entity Name: SOJ COMPANY, LLC*, Division of Corporations,                Florida                Department                of                State, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityNam e&directionType=Initial&searchNameOrder=SOJ%20L190002604830&aggregateId=flal-l1900 0260483-da20963d-30e5-4747-9022-05cf4accafef&searchTerm=SOJ%20COMPANY%2C%20 LLC&listNameOrder=SOJ%20L190002604830 (last visited June 24, 2025).  Zero information has been provided regarding WWM's identity, whether it has any relationship to Najnudel, and to what extent this additional opaque entity would be controlling SOJ's helmsmanship of this litigation.

The Court should decline to consider any supplemental factual proffers that SOJ submits for the first time in its reply papers.  SOJ has already had ample opportunity to provide the Court with evidence sufficient to evaluate its adequacy and typicality under Rule 23, and its failure to do so without prodding from other litigants does not demonstrate a meaningful degree of engagement in this litigation.  *See, e.g.*, *Haideri v. Jumei International Holding Limited*, No. 20-cv-02751-

EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (disqualifying movants that provided court with information about themselves belatedly, "only after inquiry and prodding"). Palas and Herrero respectfully reserve their right to seek leave to file sur-reply papers to address any additional facts that SOJ submits for the first time on reply. *See DT v. Somers Cent. Sch. Dist.*, No. 06CIV2674WCCECFCASE, 2009 WL 10706891, at *2 (S.D.N.Y. Feb. 11, 2009), *aff'd*, 348 F. App'x 697 (2d Cir. 2009) (finding sur-reply appropriate "where the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply" (internal quotation marks omitted)).

SOJ's lack of transparency regarding its business and investment strategies is doubly concerning given its status as a pattern high-frequency day trader—that is, an investor that was ***not*** buying and selling Canopy shares during the Class Period in reliance upon the Defendants' alleged misrepresentations. Courts generally decline to appoint high-frequency day traders as lead plaintiff in PSLRA actions, finding them atypical, inadequate, and subject to unique defenses because their trading patterns often prevent them from establishing loss causation and benefiting from the presumption of reliance established by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). *See, e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021) (disqualifying movant where "day trading leaves him vulnerable to attacks that he did not rely on the market price in trading DraftKings, which could 'sever[ ] the link between the alleged misrepresentation and ... [his] decision to trade at a fair market price'" (quoting *Basic*, 485 U.S. at 248)); *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) (finding movant's "status as a ***potential*** 'day trader[]' . . . may . . . subject [him] to unique defenses that make him an inappropriate lead plaintiff" (emphasis added)); *Applestein v. Medivation, Inc.*, C10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal.

9

Sept. 20, 2010) (day traders "typically focus[] on technical price movements rather than price, and therefore are subject to a defense the they would have purchased the stock at issue regardless of the misstatement/omission" (internal quotations omitted)).

As discussed at length in Palas and Herrero's opposition brief, SOJ was clearly trading based on market volatility with the goal of realizing a short-term profit, rather than making a long-term investment in Canopy based on its business performance or Defendants' alleged misstatements like typical Class members. *See* Dkt. No. 21 at 5-7, 19-25. SOJ executed thousands of separate transactions in Canopy shares during the Class Period, executing **more than 100** separate transactions in Canopy shares on each of **28** different days during the Class Period. *Id.* at 20-21. The **198-page** schedule setting forth this frenetic transaction history shows that SOJ both bought **and** sold Canopy shares on **31** of the **75** days on which it purchased shares during the Class Period, executing hundreds of same-day transactions during various trading sessions. *Id.* SOJ is thus plainly atypical of other Class members, who simply purchased Canopy securities in reliance upon the Defendants' statements, in the good-faith expectation that those shares would appreciate in value.

SOJ's trading likewise subjects it to disqualifying unique defenses. "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005); *see also DraftKings*, 2021 WL 5282006, at *10 (disqualifying movant where the mere "specter of . . . attacks . . . would loom large were he to be a proxy for the class"). If SOJ is appointed Lead Plaintiff, Defendants will inevitably attempt to use its frenetic trading activity to rebut the *Basic* presumption that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity

10

of that price.  Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247.  In the worst-case scenario, the Defendants will succeed in doing so, to the obvious prejudice of the Class.  Even in the best-case scenario, SOJ will be forced to devote considerable time and energy to litigating issues that are unique to its own Class Period investment strategy, at the expense of prosecuting the Class's fraud claims.  There is no reason to saddle the Class in this litigation with a Lead Plaintiff plagued with such infirmities. . *See Teva*, 302 F. Supp. 3d at 504 n.10 ("The merits of whether the day trading defense is actually the prevailing law within the Circuit . . . is not necessarily relevant. Rather, the question is whether the appointment of a particular lead plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would unnecessarily complicate and/or stall the litigation.").

If the Court is disinclined to deny SOJ's lead plaintiff motion, Palas and Herrero respectfully request that the Court permit discovery into SOJ to assess its adequacy and capability to represent the Class, as the PSLRA permits under such circumstances.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *see also Broadfoot v. Barrick Gold Corp.*, No. 17-cv-3507, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy").

## CONCLUSION

For the foregoing reasons, Palas and Herrero respectfully request that the Court issue an Order granting their motion in all respects.

Dated:  June 24, 2025                           Respectfully submitted,

                                                POMERANTZ LLP

                                                */s/ J. Alexander Hood II*
                                                J. Alexander Hood II

11

Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Adam Palas and Carlos Luis
Acero Herrero and Proposed Lead Counsel
for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Adam Palas*

12

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Adam Palas and Carlos Luis Acero Herrero, certifies that this brief contains 3,498 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on June 24, 2025.

*/s/ J. Alexander Hood II*
J. Alexander Hood II