UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
BRUCE D. BARON, Individually and on behalf
of all others similarly situated,

                        Plaintiff,                      **OPINION & ORDER**

                     v.                                     25-cv-1877 (AMD) (LKE)

CANOPY GROWTH CORPORATION, DAVID
KLEIN, and JUDY HONG,

                        Defendants.
---------------------------------------------------------------X

**LARA K. ESHKENAZI, United States Magistrate Judge:**

      Plaintiff Bruce D. Baron, individually and on behalf of all others similarly situated, brings this action against Defendants Canopy Growth Corporation ("Canopy"), David Klein, and Judy Hong (collectively, "Defendants") for alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"). (*See generally* Compl., ECF 1.) Before the Court are the individual motions of Movants Mohammad Tayaran, SOJ Company, LLC, as well as the joint motion of Adam Palas and Carlos Luis Acero Herrero, to be named as Lead Plaintiff and for appointment of Lead Counsel pursuant to the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Tayaran Mot. To Appoint Counsel and Lead Pl., ECF 12 ("Tayaran Mot."); SOJ Mot. To Appoint Counsel and Lead Pl., ECF 13-15 ("SOJ Mot."); Palas and Herrero Mot. To Appoint Counsel and Co-Lead Pls., ECF 16 ("Palas & Herrero Mot.").) For the reasons stated below, the Motion of Palas and Herrero to be appointed as Co-Lead Plaintiffs, and Pomerantz LLP ("Pomerantz") to be appointed as Co-Lead Plaintiffs' Counsel, is granted, and the individual motions of Tayaran and SOJ are denied.

I. **BACKGROUND**

   A. **Factual Allegations**

Canopy is a cannabis company that, "together with its subsidiaries, produces, distributes, and sells cannabis and hemp-based products for recreational and medical purposes." (Compl. ¶ 2.) Canopy's products include "pre-rolled joints (*i.e.*, cannabis cigarettes) and its Storz & Bickel brand vaporizer devices." (*Id.*) According to Canopy's U.S. Securities and Exchange Commission filings, "[t]he cannabis industry is a margin-based business in which gross profits depend on the excess of sales prices over costs." (*Id.* at ¶ 4.) As such, Defendants emphasized Canopy's implementation of cost reduction measures, such as measures to "reduce pre-rolled joint production costs and overall production distribution costs." (*Id.*) In November 2024, Canopy announced that it launched "'award-winning California grown Claybourne brand' pre-rolled joints in Canada through an exclusive licensing agreement with Claybourne Co. ('Claybourne')." (*Id.* at ¶ 3.) Defendants "repeatedly touted the positive impact that [cost reduction] measures were purportedly having" on Canopy's profitability and gross margins during its 2025 fiscal year and downplayed the significant production costs of the Claybourne pre-rolled joints and Storz & Bickel vaporizer devices. (*Id.* at ¶¶ 4-5.)

On February 7, 2025, Canopy issued a press release announcing its financial results for the third quarter of its 2025 fiscal year. (*Id.* ¶ 6.) Canopy reported that its "[g]ross margin decreased by 400 basis points … primarily due to the incremental costs" of the Claybourne joints and the vaporizer devices. (*Id.*) Canopy also disclosed to its investors and analysts that the financial loss was due to the higher initial costs of production and shipping associated with these products. (*Id.* at ¶ 7.) Thereafter, Canopy's common share price fell $0.76 per share. (*Id.* at ¶ 8.)

2

B.      **Procedural History**

On April 4, 2025, Baron filed his Complaint against Defendants, alleging that Defendants made false and misleading statements and failed to disclose adverse material facts about the business, operations, and prospects. (*Id.* at ¶ 51.) On June 3, 2025, Movants Mohammad Tayaran, SOJ Company, LLC, and Allen Dennis each filed individual Motions to Appoint Lead Counsel and Lead Plaintiff. (Tayaran Mot., ECF 12; SOJ Mot., ECF 13-15; Allen Dennis Mot. To Appoint Counsel and Lead Plaintiff, ECF 17 ("Dennis Mot.").) On the same day, Adam Palas and Carlos Luis Acero Herrero filed a joint motion seeking to be named Co-Lead Plaintiffs and to appoint their chosen counsel as Lead Counsel. (Palas & Herrero Mot., ECF 16.) Dennis subsequently withdrew his motion on June 17, 2025. (Dennis Mot., ECF 18.) Each of the remaining Movants subsequently filed oppositions and reply papers. (*See* ECF 19-21, 23-25.).

II.     **DISCUSSION**

A.      **Legal Standard**

The determination of whether an applicant is a suitable lead plaintiff under the PSLRA involves a two-step analysis. First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is:

> the person or group of persons that: (1) has either filed the complaint or made a [timely] motion to be appointed as lead plaintiff(s); (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Chitturi v. Kingold Jewelry, Inc.*, No. 20-cv-2886, 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020) (internal citations omitted). For potential lead plaintiffs who did not file the complaint in the action, the PSLRA provides a statutory 60-day period to file a timely motion to be named the lead plaintiff after the date on which notice is published. 15 U.S.C. §77z-1(a)(3)(A)(i)(II);

3

*Murphy v. Argo Blockchain plc*, 683 F. Supp. 3d 211, 216 (E.D.N.Y. 2023) (noting that intended lead plaintiffs must file motions to serve as lead plaintiff "not later than 60 days after the date on which the notice is published").

The relevant factors for the Court to consider in determining whether a potential lead plaintiff has the largest financial interest in the class include: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (i.e., the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (i.e., the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)) (the "*Olsten* factors").

Generally, class certification under Federal Rule of Civil Procedure 23 requires that a potential class establish the factors of numerosity, commonality, typicality, and adequacy. *See Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015). For a motion to appoint a lead plaintiff under the PSLRA, however, a proposed plaintiff need only make a preliminary showing that Rule 23's typicality and adequacy factors are met. *Hunter v. Blue Ridge Bankshares, Inc.*, 346 F.R.D. 16, 24 (E.D.N.Y. 2024). Claims or defenses presented by the lead plaintiff must be typical to the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). This is satisfied where "the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Murphy*, 683 F. Supp. 3d at 222. A lead plaintiff's claims "need not be identical to the claims of the class to satisfy the typicality requirement." *City of Ann Arbor Employees' Ret. Sys. V. Citigroup Mortg. Loan Tr. Inc.*, No. 08-

4

cv-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009). Rather, a lead plaintiff is considered "typical" when their "claims are based on the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims." *Lemm v. New York Community Bancorp, Inc.*, 733 F. Supp. 3d 107, 115 (E.D.N.Y. 2024). Adequacy under Rule 23 requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirements of Rule 23:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*Kehoe v. 3D Sys. Corp.*, No. 21-cv-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021).

In the second step of analysis under the PSLRA, "[o]nce the court is satisfied that it has found the presumptive lead plaintiff, the court may then consider whether that presumption has been 'rebutted' by a member of the purported plaintiff class." *Hunter*, 346 F.R.D. at 23 (*citing Lemm*, 733 F.Supp.3d at 114). This may only be done upon proof that the presumptively adequate plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff inadequate to sufficiently represent the class. *Chitturi,* 2020 WL 8225336, at *4.

Courts regularly approve co-lead plaintiff structures where it "best serve[s] the interests of the proposed class given 'the circumstances of th[e] particular case." *Pub. Employees' Ret. Sys. of Miss. v. Millennial Media, Inc. (In re Millennial Media, Inc. Sec. Litig.)*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) (citation omitted); *see also Emerson v. Mut. Fund Series Tr.*, No. 17-cv-2565, 2018 U.S. Dist. LEXIS 236261, at *5-6 (E.D.N.Y. Jan. 8, 2018) (collecting cases). If a

5

court finds that "'litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable,' the Court may modify this co-lead plaintiff structure." *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-cv-3070, 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021) (quoting *Dolan v. Axis Cap. Holdings Ltd.*, No. 04-cv-8564, 2005 WL 883008, at *6 (S.D.N.Y. Apr. 13, 2005)).

After the lead plaintiff is selected, "[t]the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). "There is a strong resumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Hunter*, 346 F.R.D. at 26 (citing *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-cv-8122, 2019 WL 6873807, at *5 (S.D.N.Y. Dec. 17, 2019)). The experience of a firm has a heavy influence on lead counsel selection. *See Hunter*, 346 F.R.D. at 25 (naming lead plaintiff's selection of counsel as lead counsel where firm was experienced in securities litigation); *see also Lemm*, 733 F. Supp. 3d at 116 (same).

B. **Analysis**

As a threshold matter, all applicants for lead plaintiff filed their applications for lead plaintiff status prior to 15 U.S.C. § 77z-1(a)(3)(A)(i)(II)'s 60-day deadline. Under the PSLRA, hopeful lead plaintiffs must file their applications within 60 days of the publication of notice that the action has been initiated. 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). Here, notice under the PSLRA was effectuated on April 6, 2025, when Baron's counsel issued a press release concerning the action. (Tayaran Mot. Ex. C, ECF 12-6.) As such, any lead plaintiff applications were due on or before June 5, 2025. All movants filed their applications on June 3, 2025. (*See* Tayaran Mot.; SOJ Mot.; Palas & Herrero Mot.)

6

### 1. Financial Interests of the Applicants

The Court now turns to the financial interest of the applicants. Each applicant alleges that they hold the largest financial interest in the relief sought by the class, and as such, each applicant will be assessed in turn. (*See* Tayaran Mot.; SOJ Mot.; Palas & Herrero Mot.) To determine whether an applicant or group of applicants hold the largest financial interest, the Court applies the *Olsten* factors. *Olsten*, 3 F. Supp. 2d at 295.

#### a. Movant Tayaran

Turning first to the total number of shares purchased during the class period, applicant Tayaran purchased 42,746 shares between May 30, 2024, and February 6, 2025 (the "Class Period"). (*See* Tayaran Mot. Ex. B., Loss Chart, ECF No. 12-5 (showing purchases of shares between October 24, 2024 and February 5, 2025).). Tayaran did not sell any shares during the Class Period. (*Id.*) As such, under the second *Olsten* factor, the net shares purchased by Tayaran (i.e., the difference between the number of shares purchased and the number of shares sold during the class period) is zero. *See In re Gentiva*, 281 F.R.D. at 112 (citing *Olsten*, 3 F. Supp. 2d at 295). To assess the third *Olsten* factor, the net funds expended by the lead plaintiff during the class period, the Court considers the difference between the amount spent to purchase the plaintiff's shares and the amount received for the sale of any shares during the class period. *See id.* During the class period, Tayaran did not sell any shares, so his net funds expended is zero. (Tayaran Mot. Ex. B, Loss Chart.) Under the fourth *Olsten* factor, the Court reviews the approximate losses suffered. *See In re Gentiva*, 281 F.R.D. at 112. In total, Tayaran alleges $95,669.56 in losses suffered, calculated on a last-in, first-out ("LIFO") basis.[1] (Tayaran Mot. Ex. B, Loss Chart.)

---

[1] LIFO is a methodology used to calculate losses by "assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011).

b.      *Movant SOJ Company*

Next, applicant SOJ alleges that it sustained approximately $1,462,718.36 in losses. (SOJ Mot. 5, ECF 14.) In a 120-page loss chart, SOJ lists the extensive trade transactions that it conducted during the class period, often buying and selling thousands of Canopy shares within a given day. (*See* SOJ Mot. Ex. C., Loss Chart, ECF No. 15-3.) Since SOJ did not provide an analysis or summary of its financial transactions, the Court reviews the summary of SOJ's transactions submitted by Tayaran in opposition. (*See* Tayaran Opp. Br., Supp. Dec., ECF 19-2.) According to Tayaran's summary, SOJ purchased 2,379,186 shares during the class period. (*See id.* at 112.) Applying the second *Olsten* factor, SOJ appears to have sold 2,571,181 shares, making the net shares purchased -191,995. (*See id.*) Under the third *Olsten* factor, SOJ spent $12,761,917.82 to purchase Canopy shares, and received $12,655,013.60, making the net funds expended approximately $106,904.22. (*See id.*) Finally, SOJ alleges $1,462,706.36 in losses suffered, calculated on a LIFO basis. (*See* SOJ Mot. 5; *see also* Tayaran Opp. Br., Supp. Dec. 112.)

c.      *Movants Palas and Herrero*

During the class period, co-applicants Palas and Herrero purchased a combined 115,950 of common shares, and 2,050 options contracts. (*See* Palas & Herrero Mot. Ex. A 1, 2, ECF 16-4 (showing Herrero's purchases of 75,900 shares from August 9, 2024, to January 10, 2025, and Palas' purchases of 40,050 shares from May 30, 2024, to October 24, 2024, and 2,050 options from June 12, 2024, to November 5, 2024).) Herrero sold 23,600 of his shares by December 30, 2024, while Palas sold 59,900 in common shares and 200 in options by November 1, 2024. (Palas & Herrero Mot. Ex. C 4, 7, ECF 16-6.) As such, under the second *Olsten* factor, the net

8

shares purchased by the co-lead plaintiff applicants is 32,450 in common shares, and 1,850 in options. *See In re Gentiva*, 281 F.R.D. at 112 (citing *Olsten*, 3 F. Supp. 2d at 295).

As for the third *Olsten* factor, Palas and Herrero expended a total of $74,330 in common shares, and $270,617 in options (*See* Palas & Herrero Mot. Ex. A 2.) Herrero and Palas purchased 115,950 common shares for a total of $540,666, and sold 83,500 shares for a total of $466,336, creating a loss of $74,330. (*See id.*) Palas purchased 2,050 in options for a total of $284,617, and sold 200 options at a total of $1400, creating a loss of $260,617. (*See id.*) Under the fourth *Olsten* factor, the co-applicants allege $389,341 in losses suffered; Palas alleges a loss of $269,281, and Herrero a loss of $120,060, calculated on a LIFO basis. (Palas & Herrero Mot. 1; Palas & Herrero Opp. Br. 9, ECF 21.)

### d. Plaintiff Baron

As the Plaintiff who filed the Complaint in this action, Baron claims he will fairly and adequately protect the members of the Class. (Compl. ¶ 62.) Baron purchased a total of 23 shares during the class period. (Compl., Baron Cert. (showing Baron's purchases of 23 shares from June 21, 2024 to December 18, 2024).) Under the second and third *Olsten* factors, since Baron sold no shares, the net shares purchased is zero, and the net funds expended is also zero. Finally, Baron has not delineated his amount of financial loss suffered.

In comparing each applicant, SOJ has the greatest financial interests, with a loss of $1,462,706.06, followed by Palas and Herrero at $389,341, and Tayaran at $95,669.56.

### 2. Rebuttal of the Presumption

Under the PSLRA, the class member who meets the requirement of showing the largest financial interest "is presumptively the lead plaintiff, subject to rebuttal from other class members that the presumptive lead plaintiff 'will not fairly and adequately protect the interests of

the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878, at *7 (E.D.N.Y. Mar. 2, 2007) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb)). "Before disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed." *Gross v. AT&T Inc.*, No. 19-Civ.-2892, 2019 U.S. Dist. LEXIS 128615, at *6 (S.D.N.Y. July 31, 2019). Rather, the Court must find only "at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses." *Batter v. Hecla Mining Co.*, No. 19-cv-4883, 2020 U.S. Dist. LEXIS 51665, at *22 (S.D.N.Y. Mar. 25, 2020) (quoting *In re Surebeam Corp. Sec. Litig.*, No. 03-cv-1721, 2003 U.S. Dist. LEXIS 25022, at *7 (S.D. Cal. Jan. 5, 2004)).

Tayaran, Palas and Herrero argue that SOJ is an atypical class representative subject to a "unique defense" because SOJ's purchase and sale of Canopy shares at "high volumes during single trading days" is indicative of a "high-frequency day trader." (Palas & Herrero Opp. Br. 19; *see also* Tayaran Opp Br 4 ("With nearly 200 pages of trades appended to its certification, SOJ … is clearly an investment vehicle used for day-trading.").) Palas and Herrero cite to the 8,294 separate transactions that SOJ executed over the course of the class period, highlighting transactions where SOJ successfully earned high profits through its high frequency transactions. (*See, e.g.*, Palas & Herrero Opp. Br. 19-21 ("[O]n August 27, 2024, SOJ purchased 40,000 Canopy shares via 27 separate transactions and sold 150,402 Canopy shares via 486 separate transactions for a profit of $563,367.26.").) According to Palas and Herrero, these "highly unorthodox trading patterns" reveal that "SOJ was trading based on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations." (*Id.* at 19, 21.)

10

Courts have been wary of appointing day traders as lead plaintiffs because such plaintiffs may be more "vulnerable to attacks that [they] did not rely on the market price in trading [securities], which could 'sever[] the link between the alleged misrepresentation and . . . [the plaintiff's] decision to trade at a fair market price.'" *Rodriguez v. Draftkings Inc.*, No. 21-cv-5739, 2021 U.S. Dist. LEXIS 219489, at *27 (S.D.N.Y. Nov. 12, 2021) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)) (declining to appoint as lead plaintiff a day-trader who traded "in and out 64 times" during the class period); *see also Africa v. Jianpu Tech., Inc.*, No. 21-cv-1419, 2021 U.S. Dist. LEXIS 95246, at *1 (S.D.N.Y. May 19, 2021) (denying a motion where "the vast majority" of the movant's "losses . . . result[ed] from in-and-out transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public" (internal quotation marks omitted)).

While courts have appointed lead plaintiffs who have engaged in day trading, *see Prefontaine v. Research in Motion Ltd.*, No. 11-cv-4068, 2012 U.S. Dist. LEXIS 4238, at *4 (S.D.N.Y. Jan. 5, 2012), "the merits of whether the day trading defense is actually the prevailing law within the Circuit . . . is not necessarily relevant." *Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017). "Rather, the question is whether the appointment of a particular lead plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would unnecessarily complicate and/or stall the litigation." *Id.* Indeed, courts in this Circuit have refused to appoint in-and-out day traders as lead plaintiffs because they would need to expend considerable resources establishing that their losses were in fact due to the alleged misrepresentations. *George v. China Auto. Sys., Inc.*, No. 11-cv-7533, 2013 U.S. Dist. LEXIS 93698, at *17-18 (S.D.N.Y. July 3, 2013) (collecting cases).

Accordingly, the Court agrees with Tayaran, Palas and Herrero that SOJ's high volume, high frequency day trading patterns, many of which occurred well before Canopy's alleged misrepresentations, may subject SOJ to unique defenses that could call into question whether SOJ actually relied on Canopy's statements. (*See* SOJ Mot. Loss Chart); *see also Gross*, 2019 U.S. Dist. LEXIS 128615, at *2; *Batter*, 2020 U.S. Dist. LEXIS 51665, at *22. The Court therefore declines to appoint SOJ as lead plaintiff despite SOJ having the largest financial interest of the applicants.

The candidates for lead plaintiffs with the next highest financial stake in the litigation are Palas and Herrero, who are thus presumed to be the most adequate class representatives subject to rebuttal. *See In re Converse Tech.*, 2007 U.S. Dist. LEXIS 14878, at *7. Tayaran argues that Palas and Herrero fail to meet Rule 23's typicality requirement because the "majority of their losses stem from option transactions, and not common stock," as "approximately 65% of their losses are attributable to option transactions." (Tayaran Opp. Br. 9.) According to Tayaran, "a movant is atypical if he/she purchases a significant amount of securities other than common stock." (*Id.* (citing *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20-cv-5865, 2020 U.S. Dist. LEXIS 242969, at *10 (S.D.N.Y. Dec. 28, 2020)).

The Court is not persuaded by Tayaran's concerns. First, "the PSLRA does not require the lead [plaintiff] in a class action to be only an investor in common stock." *Glick v. Arqit Quantum Inc.*, 666 F. Supp. 3d 222, 232 n.7 (E.D.N.Y. 2023). In fact, "courts have appointed as lead plaintiffs purchasers of a wide variety of financial instruments. Further, they often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *Freudenberg v. E*Trade Fin. Corp.*, No. 07-cv-8538, 2008 U.S. Dist. LEXIS 62767, at *16-18 (S.D.N.Y. July 16, 2008)

12

(collecting cases). In addition, *Di Scala* is distinguishable on its facts because there, the court rejected the proposed lead plaintiff due to his unique transaction activities as a third-party options seller and concerns over whether he would be "motivated by the same market incentives as class members who traded shares on the open market." 2020 U.S. Dist. LEXIS 242969, at *10. Here, unlike the potential plaintiff in *Di Scala*, Palas and Herrero purchased 115,950 in common shares for a total of $540,666, in addition to Palas' purchase of 2,050 in options for a total of $284,617. (*See* Palas & Herrero Mot. Ex. A 2.) Herrero alone, who only purchased common shares, alleges a loss of $120,060, while Tayaran purchased 42,746 common shares and alleges a loss of $95,669.56. (*Compare* Palas & Herrero Mot. Ex. A 2 *with* Tayaran Mot. Ex. B, Loss Chart 2.) As such, there is no reason to doubt that Palas and Herrero would be motivated by the same market incentives as other class members. Tayaran therefore fails to rebut the presumption that Palas and Herrero would be the most adequate class representatives.

### 3. Typicality and Adequacy

Having established Palas and Herrero as the presumptive lead plaintiffs, the Court now considers whether the co-applicants have established that they meet Rule 23's typicality and adequacy requirements. Typicality requires that a lead plaintiff's "claims are based on the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims." *Lemm*, 733 F. Supp. 3d at 115. Here, Palas and Herrero allege that they purchased stock during the class period and suffered losses that they claim were due to Defendants' violations of the Exchange Act and thus satisfies the typicality requirement. (*See* Palas & Herrero Mot. 4.)

Next, adequacy "entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced

13

and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). First, there is no apparent conflict between the interests of the Class and the interests of the co-movants as expressed in the filings, and there is no evidence of collusion. (*See* Palas & Herrero Mot. 9 ("There is no evidence of antagonism or conflict between Palas and Herrero's interests and those of the Class").) Second, Pomerantz, the Lead Counsel chosen by the Palas and Herrero, appears to be experienced in litigating securities class actions. (Palas & Herrero Mot. Ex. E 2-5, ECF 16-8 (detailed resume describing the firm's experience as lead counsel in securities class actions).) Finally, the co-movants have an interest in advancing the outcomes of this litigation. (*See* Palas & Herrero Mot. 9 ("Palas and Herrero have submitted sworn Certifications declaring their commitment to protect the interests of the Class … and their significant financial interest demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.").) As such, this Court finds that the co-movants are adequate and thus meet Rule 23's requirements.

Finally, the Court recognizes that "appointing a group of people as co-lead plaintiffs is not only allowable under the PSLRA, but often beneficial." *Mitchell v. Complete Mgmt., Inc.*, 1999 U.S. Dist. LEXIS 14460, at *10 (S.D.N.Y. Sep. 15, 1999). Courts have permitted co-lead plaintiffs to "help to ensure that adequate resources and experience are available to the prospective class in the prosecution of this action. . . . [and] provide the proposed class with 'the substantial benefits of joint decision-making.'" *Emerson*, 2018 U.S. Dist. LEXIS 236261, at *5-6 (citation omitted). If a court finds that "'litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable,' the Court may

modify this co-lead plaintiff structure." *Lavin*, 2021 WL 5409798, at *5 (quoting *Dolan*, 2005 WL 883008, at *6).

The Court is satisfied that Palas and Herrero will be appropriate Co-Lead Plaintiffs. First, a two-person lead plaintiff group is small and presumptively cohesive, even without a pre-litigation relationship. *Cushman v. Fortress Biotech, Inc.*, No. 20-cv-5767, 2021 U.S. Dist. LEXIS 256466, at *16 (E.D.N.Y. Mar. 24, 2021). Second, Palas and Herrero have agreed upon a conflict-resolution mechanism if any disputes should arise. (*See* Palas & Herrero Mot. Joint Decl. ¶ 10, ECF 16-7 (agreeing to resolve disputes by "majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our Class Period transactions in Canopy securities").) Finally, as the co-applicants have moved jointly to be appointed as Co-Lead Plaintiffs, they are presumably aware of any differences in losses or types of securities. Given the consent of the co-movants and the Court's discretion in the lead plaintiff appointment process, the Court finds that the appointment of Palas and Herrero as Co-Lead Plaintiffs is appropriate.

Palas and Herrero therefore satisfy the requirements under the PSLRA and Rule 23 and shall be designated as Co-Lead Plaintiffs.

15

## III. CONCLUSION

For the forgoing reasons, Palas and Herrero's motion for appointment as Co-Lead Plaintiffs and for the approval of Pomerantz LLP as Co-Lead Plaintiffs' Counsel for the Class is granted. Tayaran and SOJ's motions are denied.

**SO ORDERED.**

Dated: Brooklyn, New York
       November 21, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge

16